# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2020

Lyle W. Cayce
Clerk

No. 19-50470

JESSICA SINGLETON, individually and on behalf of all others similarly situated; TONY COOPER, individually and on behalf of all others similarly situated,

      Plaintiffs - Appellants

v.

ELEPHANT INSURANCE COMPANY, a foreign insurance company,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before KING, COSTA, and HO, Circuit Judges.

PER CURIAM:

When an insured automobile is so damaged that it would cost more to repair than to replace, it is usually deemed a total loss. The insurance company then reimburses the policyholder for the value of the vehicle, with the expectation that the policyholder will probably use this money to purchase a replacement. Of course, purchasing and registering the replacement vehicle requires the payment of taxes and fees to the state.

In this case, two policyholders sued their insurance company, claiming that it should pay for the taxes and fees associated with replacing their totaled vehicles, thus making them whole. Interpreting the relevant policy language

No. 19-50470

under Texas law, we conclude, first, that each of the policyholders was entitled to the fair market value of his pre-loss vehicle and, second, that fair market value does not include the taxes and fees payable to purchase a replacement vehicle. We thus affirm the district court's dismissal of the complaint.

**I.**

Plaintiffs–appellants Jessica Singleton and Tony Cooper are Texas residents who each owned a vehicle insured by defendant–appellee Elephant Insurance Co. As relevant here, their policies provided that, in the event of a total loss, Elephant's liability would be limited to the "actual cash value of the stolen or damaged property at the time of the loss, reduced by the applicable deductible . . . and by its salvage value if [the policyholder] or the owner retain[ed] the salvage." The policies also stated that the "actual cash value is determined by the market value, age and condition of the auto . . . at the time the loss occurs." The policies provided that any disputes would be governed by Texas law.

Singleton and Cooper were involved in collisions and subsequently filed insurance claims. Elephant determined that their vehicles were total losses and compensated them in amounts corresponding to the estimated "adjusted vehicle value" of their automobiles before the accidents, minus the applicable deductibles.[1] Elephant did not compensate them for the taxes and fees attendant to replacing their vehicles in Texas.

Singleton and Cooper brought a putative class action against Elephant to recover these taxes and fees. They alleged that Elephant was liable for breach of contract and for violating provisions of the Texas Insurance Code that require prompt payment of claims.

---

[1] The adjusted vehicle value was calculated based on the sale prices of comparable vehicles, with adjustments made for the pre-accident condition of Singleton's and Cooper's vehicles. Appellants do not dispute the accuracy of these calculations.

2

No. 19-50470

The district court dismissed the complaint on Elephant's motion. It ruled that Singleton and Cooper were not entitled to recover replacement costs, like taxes and fees, and that they therefore had failed to state a claim for breach of contract. And because they had no contract claim, the district court further ruled that they had failed to state a claim under the Texas Insurance Code. This appeal followed.

## II.

Dismissals for failure to state a claim are reviewed de novo. *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019). Similarly, the interpretation of an insurance policy is a question of law that we review de novo. *Lubbock Cty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 143 F.3d 239, 241-42 (5th Cir. 1998).

Under Texas law, if language in an insurance policy "is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "Whether a contract is ambiguous is itself a question of law," and "ambiguity does not arise simply because the parties offer conflicting interpretations." *Id.* Rather, "ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations." *Id.*

A provision in an insurance policy is interpreted according to its "plain language," and "we assign terms their ordinary and generally accepted meaning unless the contract directs otherwise." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). "If the contract language is not fairly susceptible of more than one legal meaning or construction, . . . extrinsic evidence is inadmissible to contradict or vary the meaning of the explicit language of the parties' written agreement." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995).

3

No. 19-50470

## III.

## A.

The policy provision at issue limits Elephant's liability for a totaled car to the "actual cash value" of the car at the time of the accident, minus the deductible. The question in this case is entirely about the term "actual cash value."[2]

### 1.

Although the policy defines certain terms, it does not define "actual cash value." Instead, it states only that the "actual cash value is determined by the market value, age and condition" of the vehicle at the time of the accident. We thus construe "actual cash value" according to its "ordinary and generally accepted meaning," *Primo*, 512 S.W.3d at 893.

Appellants do not dispute that, under Texas law, actual cash value is equivalent to fair market value.[3] The Supreme Court of Texas has stated that,

---

[2] Appellants argue that the policy should be construed to indemnify them because the purpose of insurance is to place the insured "in as good a condition, so far as practicable, as he would have been in if no [accident] had occurred," *Crisp v. Sec. Nat'l Ins. Co.*, 369 S.W.2d 326, 328 (Tex. 1963) (citation omitted). But what controls is the text of the specific policy in question, not the purpose of insurance generally. Here, the specific policy "does not undertake to indemnify the insured against all loss"; rather, "[t]he insurer's liability . . . is expressly bounded by the policy's Limit of Liability." *Schaefer*, 124 S.W.3d at 161. We thus proceed directly to an analysis of the policy language.

[3] Although this case turns on Texas law, appellants rely in large part on cases from other jurisdictions. We do not believe that Texas courts would find those decisions persuasive. Many of them center on policy language that defined actual cash value in terms of replacement costs, which is not true for Elephant's policy. *See, e.g.*, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) (policy defined actual cash value as "'the cost to repair or replace property with new materials of like kind and quality' less certain depreciation"); *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1289 (M.D. Fla. 2015) (policy defined actual cash value as "the amount it would cost, at the time of loss, to buy a comparable vehicle"); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) (policy defined actual cash value as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation"). Others originated in states that interpret actual cash value as equal to replacement costs less depreciation, and that is not the background rule in Texas. *See, e.g.*,

in the case of "marketable chattels, for which market value can be determined," "[a]ctual cash value . . . is market value." *Mew v. J&C Galleries, Inc.*, 564 S.W.2d 377, 377 (Tex. 1978). Used automobiles are indisputably marketable. Indeed, Texas courts have repeatedly suggested in the car-insurance context that the policy term "actual cash value" is equivalent to market value. *See Superior Pontiac Co. v. Queen Ins. Co. of Am.*, 434 S.W.2d 340, 341-42 (Tex. 1968) (equating "actual cash value" with "reasonable cash market value"); *Guar. Cty. Mut. Ins. Co. v. Williams*, 732 S.W.2d 57, 60 (Tex. App.—Amarillo 1987, no writ) ("[A]ctual cash value of the property stolen, a measure of the insurance company's liability under the policy, is equivalent to, and synonymous with, the market value of the property stolen."); *Agric. Workers Mut. Auto Ins. Co. v. Dawson*, 424 S.W.2d 643, 645 (Tex. Civ. App.—Tyler 1968, no writ) ("[T]he insured is entitled to the 'actual cash value' of the car, measured by the difference in the car's market value immediately before and immediately after the collision . . . ."), *disapproved of on other grounds by Schaefer*, 124 S.W.3d at 161-62.

Texas law defines "fair market value" as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Balderas-Ramirez v. Felder*, 537 S.W.3d 625, 628 (Tex. App.—Austin 2017, pet. denied) (quoting *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015)); *see also Value, Black's Law Dictionary* (11th ed. 2019) (defining "fair market value" as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction"). This definition plainly excludes taxes and fees that are remitted to the state. That

---

*Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438, 443 (Fla. 2013); *Gilderman v. State Farm Ins. Co.*, 649 A.2d 941, 943 (Pa. Super. Ct. 1994).

the state collects taxes and fees from the buyer is irrelevant to the question of fair market value because those amounts are not part of the price paid to the seller. *See Balderas-Ramirez*, 537 S.W.3d at 633 (observing that "market value" is both "the price a willing buyer would pay" *and* "the price a willing seller would accept"); *see also id.* at 629-30, 634 (calculating "fair market value" to exclude "various taxes and fees that would be associated with obtaining a replacement vehicle"). Appellants rightly observe that negotiating parties may consider the tax rate when agreeing on a price, but that indicates only that taxes are a factor that influences market value, not that taxes should be added to the price when calculating market value. *Cf. City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 185 (Tex. 2001) ("In Texas condemnation law, market value properly reflects all factors that buyers and sellers would consider in arriving at a sales price.").[4]

Accordingly, the district court was correct to dismiss the breach-of-contract claim.

**2.**

Appellants also argue that dismissal of their case at the pleading stage was inappropriate because the market value of a vehicle is a question of fact. And they argue that whether taxes and fees are included in the definition of "market value" could be illuminated by expert opinions and factual development of industry practice. These arguments lack merit.

---

[4] Appellants argue that Texas courts sometimes define "market value" as being equal to replacement cost less depreciation. But the cases that appellants cite only establish that replacement cost less depreciation is sometimes used in the real-estate context, to calculate the market value of "properties that are not frequently exchanged in the market," *Religious of the Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 616 (Tex. 1992). We find no precedent under Texas law for using it to calculate the market value of used cars, which can be readily determined in the market.

No. 19-50470

Although the market value of a particular automobile is certainly a factual question, the complaint does not allege that Elephant inaccurately appraised Singleton's or Cooper's vehicle. Rather, the basis of the complaint is that Elephant does not compensate its policyholders for the taxes and fees involved in replacing their vehicles. Because we decide as a matter of law that such compensation was not required, there is no remaining fact issue on the question of the market value of Singleton's and Cooper's vehicles. Further, because the language of the insurance policy is unambiguous, appellants' proposed extrinsic evidence is inadmissible. *See CBI Indus.*, 907 S.W.2d at 520.

**B.**

In addition to their breach-of-contract claim, appellants allege that Elephant violated the Texas Insurance Code by failing to pay their insurance claims promptly. This allegation depends entirely on appellants' position that Elephant owed them compensation for mandatory taxes and fees; appellants make no allegation that the amounts that Elephant did pay were untimely. Consequently, we affirm the district court's dismissal of this claim as well.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.