NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0039n.06

No. 20-3537

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| THOMAS J. PIECZONKA, individually and on behalf of all other similarly situated, | ) ) ) | **FILED** Jan 20, 2021 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| PROGRESSIVE SELECT INSURANCE COMPANY, | ) ) ) |  |
| Defendant-Appellee. | ) ) |  |

BEFORE:     SUHRHEINRICH, McKEAGUE, and READLER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  After crashing his 2013 Audi Q5, Plaintiff Thomas Pieczonka contacted the insurer of the vehicle, Defendant Progressive Select Insurance Company. Progressive deemed the car a total loss covered by the policy's collision coverage.  Progressive offered a final settlement payment of $15,789.40, which included an actual cash value amount of $15,320.19, plus $969.21 in sales taxes, minus the $500 deductible.  The amount did not include title fees, registration fees, or license plate fees.  Pieczonka sued[1] claiming that under Florida law actual cash value includes fees associated with purchasing a replacement vehicle.

The district court dismissed the case on Progressive's Rule 12(b)(6) motion, finding that Pieczonka had not alleged sufficient facts to show that Progressive had breached its insurance

_____

[1] The district court had diversity subject matter jurisdiction. 28 U.S.C. § 1332(d)(2).  The parties agree that Florida law applies.

policy with Pieczonka. Recognizing that Florida law requires insurance contracts to be construed according to the plain language of the policy, the district court observed that the policy term "actual cash value" expressly required Progressive to consider "market value, age, and condition . . . at the time the loss occurs" and "nothing more." Because this language was plain and unambiguous, the court refused to "read additional terms into this definition." The court noted that the policy's liability limits, which distinguish between actual cash value and "the amount necessary to replace the stolen or damaged property reduced by the applicable deductible," "further undercut" Pieczonka's position. Costs of title, registration, and license fees could be covered by the latter. Thus, including them in the former would render replacement compensation "redundant."

The district court got it right. Under a plain reading of the policy language, *see Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002), "actual cash value" is determined by three factors at the time of the loss: market value, age, and condition. *See Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867, 870 (W.D. Wis. 2019) (holding the same definition of actual cash value was unambiguous and defined in a manner distinguishable from replacement cost); *Pappas v. Auto Club Ins. Ass'n*, No. 20 CV 983, 2020 WL 3303004, at *3–4 (N.D. Ill. June 18, 2020) (finding the same definition of actual cash value did not include registration and title fees because a car's market value is "independent of the legal requirements to drive it on the road," and its age and condition are not related to any registration or license plate fees). And the ordinary meaning of the first factor, market value, is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction." *Black's Law Dictionary* (11th ed. 2019) (defining "market value" to be synonymous with "fair market value"). Florida law is consistent with this definition. *See Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. Dist. Ct. App. 1997) (stating that fair market value should be

understood as "'the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied" (quoting *City of Tampa v. Colgan*, 163 So. 577, 582 (Fla. 1935))). This factor plainly does not include the costs that Pieczonka claims should be covered because those fees are not paid to the seller. *See Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 338 (5th Cir. 2020) (per curiam) ("That the state collects taxes and fees from the buyer is irrelevant to the question of fair market value because those amounts are not part of the price paid to the seller."). To be sure, negotiating parties may consider taxes and fees when agreeing on a price, but that is because they are factors that influence market value, not because they "should be added to the price when calculating market value." *Id.*

The cases cited by Pieczonka hold little persuasive weight because they interpreted policies in which actual cash value was either undefined or defined in a manner expressly including replacement costs. In *Sos v. State Farm Mutual Automobile Insurance Co.,* 396 F. Supp. 3d 1074 (M.D. Fla. 2019), and *Glover v. Liberty Mutual Insurance Co.*, 418 F. Supp. 3d 1161 (S.D. Fla. 2019), actual cash value was not defined by the policy. Thus, the *Sos* court liberally interpreted actual cash value as "replacement cost minus depreciation," while noting that actual cash value could mean either "fair market value" or "replacement cost minus normal depreciation." *Sos*, 396 F. Supp. 3d at 1079–80 (cleaned up); *see also Glover*, 418 F. Supp. 3d at 1172 (same).

The policies in *Mills v. Foremost Insurance Co.,* 511 F.3d 1300 (11th Cir. 2008), *Trinidad v. Florida Peninsula Insurance Co.*, 121 So.3d 433 (Fla. 2013), and *Bastian v. United Services Automobile Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. 2015), all either defined actual cash value to include replacement costs or expressly covered replacement costs. *See Mills,* 511 F.3d at 1305 (defining the term as "'the cost to repair or replace property with new materials of like kind and

quality' less [] depreciation"); *Trinidad*, 121 So. 3d at 442 (interpreting a policy that expressly covered "[t]he replacement cost of that part of the building damaged for like construction and use on the same premises"); *Bastian*, 150 F. Supp. 3d at 1289 (defining the term as "the amount it would cost, at the time of the loss, to buy a comparable vehicle"). They therefore have no application here.

Finally, we note that Progressive's payment of the sales tax as part of the final settlement does not undermine this reading of the policy. Florida law arguably separately requires the insurer to pay sales tax, *see* Fla. Stat. § 626.9743(9), so Progressive added this amount to the actual cash value.

We AFFIRM.