RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NANIKA WILKERSON, individually and on behalf of all
others similarly situated,

                     *Plaintiff-Appellant*,

    *v.*

AMERICAN FAMILY INSURANCE COMPANY,

                     *Defendant-Appellee*.

No. 20-4113

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02425—Christopher A. Boyko, District Judge.

Decided and Filed:  May 13, 2021

Before:  GUY, DONALD, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Jacob L. Phillips, NORMAND PLLC, Orlando, Florida, for Appellant.  Adam
Arceneaux, Jenny R. Buchheit, ICE MILLER LLP, Indianapolis, Indiana, John P. Gilligan,
Steven D. Forry, ICE MILLER LLP, Columbus, Ohio, for Appellee.

     MURPHY, J., delivered the opinion of the court in which GUY, J., joined.  DONALD, J.
(pp. 11–16), delivered a separate dissenting opinion.

───────────────

## OPINION

───────────────

     MURPHY, Circuit Judge.  When an insured motorist gets into a car accident, American
Family Insurance Company caps the amount it will pay for damage to the car.  American
Family's standard insurance policy indicates that it will pay no more than the lesser of the car's

"actual cash value" or "the amount necessary to repair or replace" it.  If the car is a total loss, the insured typically must pay various taxes and fees when buying a replacement.  This appeal addresses how these expenses fit within American Family's payment obligations.  Should the taxes and fees be included in the estimate of the damaged car's "actual cash value" if American Family opts to pay that amount?  Or are they included only if American Family decides to pay the "amount necessary to . . . replace" the car?  After Nanika Wilkerson got into a car accident, American Family took the latter position and refused to add these taxes and fees to its estimate of the "actual cash value" of Wilkerson's damaged car.  Wilkerson brought this breach-of-contract suit on behalf of a class of individuals who also were not paid these expenses.  The district court dismissed her complaint, reasoning that the "actual cash value" of a damaged car under American Family's policy unambiguously excludes the taxes and fees necessary to buy a replacement.  We agree and affirm.

## I

American Family insured Wilkerson's Chevrolet Impala.  Wilkerson was in a car accident.  She filed a claim.

American Family's insurance policy notes that it will pay for "loss of or damage to your insured car and its equipment, less the deductible[.]"  Policy, R.1-1, PageID#25.  But the policy does not cover all losses in unlimited amounts.  In a "Limits of Liability" section, it adds that American Family will pay no more than the lesser of "the actual cash value of the stolen or damaged property" or "the amount necessary to repair or replace the property."  *Id.*, PageID#26.

In Wilkerson's case, American Family concluded that the cost to "repair or replace" her Impala exceeded its pre-accident "actual cash value."  It thus found the Impala to be a "total loss."  American Family contracted with a third party, AudaExplore North America, to calculate the Impala's value.  AudaExplore estimated the Impala's market value based on its location (northeast Ohio), its mileage (45,683), its condition (minor wear), and the recent advertised prices of other 2010 Impalas in the area (ranging from $8,218 to $10,033).  AudaExplore ultimately valued Wilkerson's car at $9,979.  American Family subtracted Wilkerson's $500 deductible and paid her $9,479.

Wilkerson brought suit under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d). She interpreted the phrase "actual cash value" in American Family's insurance policy to include various sales taxes and fees that a party typically must incur when buying a replacement car (whether or not a party actually incurs those expenses in a given case). And she claimed that American Family breached the contract because AudaExplore's valuation, and American Family's payout, did not include these taxes and fees. She sought $673.58 for the taxes (an amount representing the state and local sales taxes that would have been imposed for a car priced at the Impala's value). She also sought $19.50 for the fees charged in Ohio to transfer a car's title and registration. She sued on behalf of herself and a class of individuals who likewise did not receive payment for these taxes and fees.

The district court dismissed her complaint. We review its decision de novo. *See Nixon v. Wilmington Tr. Co.*, 543 F.3d 354, 356 (6th Cir. 2008).

II

A

Both parties agree that Ohio contract law applies to Wilkerson's claim. *See Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019). "Under Ohio law, '[i]f a contract is clear and unambiguous, then its interpretation is a matter of law'" for the court. *Id.* (quoting *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995)). If, however, the contract is facially ambiguous, the court may resort to evidence outside the contract to determine its meaning. *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). And if the reading favoring the insured is a reasonable way to resolve any ambiguity, the court generally must adopt that reading because insurance contracts are construed against their drafters (normally, the insurers). *See id.* at 1262; *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020).

This appeal thus turns on whether the phrase "actual cash value of the stolen or damaged property" in American Family's insurance policy *unambiguously* excludes the taxes and fees typically incurred to buy replacement property. Policy, R.1-1, PageID#26. When deciding whether a contract is unambiguous, Ohio courts presume that its language takes its ordinary

meaning. *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 120 N.E.3d 762, 766 (Ohio 2018); *Nationwide*, 652 N.E.2d at 686. If answered from this perspective, the question in this case would be easy. The ordinary insured motorist (and ordinary speaker of the English language) would not say that the taxes and fees incurred to buy a replacement car are part of the "actual cash value" of the damaged car. The word "value" has a plain meaning: "The material or monetary worth of something; the amount at which something may be estimated in terms of a medium of exchange, as money or goods, or some other similar standard." *Oxford English Dictionary* (online ed.) (last visited May 3, 2021). The modifiers ("actual cash") next suggest that the policy picks dollars as the standard of measurement. And the ensuing prepositional phrase ("of the . . . damaged property") identifies the item whose worth is being measured. Putting these phrases together, the clause directs the parties to estimate the damaged car's monetary worth. And its "worth" does not include these taxes and fees.

But things are not so simple. Ohio courts only *presume* that a contract's words bear their ordinary meaning. The context sometimes shows that the parties instead intended for a special meaning, such as when a phrase has developed a technical usage over time. *See Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015); *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1351 (Ohio 1982). And here, the phrase "actual cash value" has become a legal term of art in this insurance context. *See Black's Law Dictionary* 1784 (10th ed. 2014); J.A. Tyler, Annotation, *Test or Criterion of "Actual Cash Value" under Insurance Policy Insuring to Extent of Actual Cash Value at Time of Loss*, 61 A.L.R.2d 711, Westlaw (database updated 2021).

Analyzing the question from this special-meaning perspective adds some complexity to our answer. On the one hand, the phrase "actual cash value" still largely tracks its ordinary meaning even in this insurance setting. As one authority notes: "Ordinarily, the measure of damages for the loss or destruction of personal property is its market value, if it has a market value[.]" Tyler, *supra*, 61 A.L.R.2d 711 § 3. As another says: "In physical damage coverage . . . the phrase is generally considered to be the fair market value[.]" 6 Andrew Janquitto, *New Appleman on Insurance Law Library Edition* § 62.08[1][b][i], Lexis (database updated 2020). Many state courts (such as Texas) thus view fair market value as the default

definition of "actual cash value." *See, e.g.*, *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 337–38 (5th Cir. 2020) (per curiam); *Clark v. Clarendon Ins. Co.*, 841 So. 2d 1039, 1046 (La. Ct. App. 2003). And definitions of "fair market value" or "market value" generally resemble the definition of value: "The price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction." *Black's Law Dictionary*, *supra*, at 1785. So if "actual cash value" in American Family's policy adopted this definition, it would again unambiguously exclude the taxes and fees required to buy a replacement car. *See Williams-Diggins v. Permanent Gen. Assurance Corp.*, 157 N.E.3d 220, 225 (Ohio Ct. App. 2020) (citing cases). As we ourselves have reasoned, "negotiating parties may consider taxes and fees when agreeing on a price, but that is because they are factors that influence market value, not because they 'should be added to the price when calculating market value.'" *Pieczonka v. Progressive Select Ins. Co.*, 840 F. App'x 856, 858 (6th Cir. 2021) (quoting *Singleton*, 953 F.3d at 338).

On the other hand, the phrase "actual cash value" in this insurance setting also can mean "[r]eplacement cost minus normal depreciation" for the damaged car. *Black's Law Dictionary*, *supra*, at 1784. Some state courts (such as Florida) have adopted this replacement-cost-minus-depreciation definition as their default rule. *See* Janquitto, *supra*, § 62.08[1][b][i]; Tyler, *supra*, 61 A.L.R.2d 711 § 4; *Singleton*, 953 F.3d at 337 n.3. And if "actual cash value" in American Family's policy adopted this idiosyncratic definition, the policy might well include the taxes and fees that Wilkerson seeks because those expenses are likely part of the typical "replacement costs." *See, e.g.*, *Ostendorf v. Grange Indem. Ins. Co.*, 2020 WL 134169, at *3 (S.D. Ohio Jan. 13, 2020); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1080–81 (M.D. Fla. 2019).

The choice between these dueling definitions is thus critical to resolving this case. Although many state courts have chosen one of the definitions as their "background rule," *Singleton*, 953 F.3d at 337 n.3, the Ohio Supreme Court has yet to identify a default definition that parties may contract around. Ohio's appellate courts have not either. They have recognized the "conflict" between other state courts on the issue. *Florea v. Nationwide Mut. Fire Ins. Co.*, 1983 WL 5030, at *3 (Ohio Ct. App. Jan. 28, 1983); *see Burden v. N.H. Ins. Co.*, 1981 WL 3817, at *2 (Ohio Ct. App. Jan. 1, 1981) (per curiam). But they have suggested that the phrase can take

either definition depending on the contract's language. *See Williams-Diggins*, 157 N.E.3d at 225; *Modesty v. Scottsdale Surplus Lines*, 2006 WL 2374311, at *2 (Ohio Ct. App. Aug. 17, 2006); *Jones v. Auto-Owners Mut. Ins. Co.*, 1999 WL 435103, at *4–5 (Ohio Ct. App. June 30, 1999); *Asmaro v. Jefferson Ins. Co. of N.Y.*, 574 N.E.2d 1118, 1122 (Ohio Ct. App. 1989). Until the Ohio Supreme Court offers additional guidance, then, "actual cash value" presumptively could mean either "fair market value" or "replacement costs minus depreciation" in Ohio.

Does this conclusion require us to assume that the phrase is ambiguous in American Family's specific policy? Not at all. When a phrase can bear two meanings, Ohio courts expand their horizons by looking at the contract as whole to see if one clear meaning best fits the context. *See Dominish v. Nationwide Ins. Co.*, 953 N.E.2d 820, 822 (Ohio 2011); *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). That is the case here. To be sure, unlike many insurance policies, American Family's policy does not include an express definition of "actual cash value" one way or the other. *Compare Williams-Diggins*, 157 N.E.3d at 226–27 (market value), *with Desai v. GEICO Cas. Co.*, 478 F. Supp. 3d 609, 613 (N.D. Ohio 2020) (replacement costs); *Davis v. GEICO Cas. Co.*, 2020 WL 68573 at *1 (S.D. Ohio Jan. 7, 2020) (same). But a broader look at American Family's insurance policy leaves no doubt that it uses "actual cash value" to mean market value.

Most notably, the phrase "actual cash value" sits within the "Limits of Liability" section of the policy. In that section, American Family has limited its liability to the lesser of two amounts: (1) "the *actual cash value* of the stolen or damaged property" or (2) "the amount necessary to repair or *replace* the property." Policy, R.1-1, PageID#26 (emphases added). The policy thus already incorporates a liability limit tied to the costs of a replacement car that is separate from the liability limit tied to the damaged car's actual cash value. Interpreting "actual cash value" to mean replacement costs minus depreciation renders these complimentary clauses incoherent. Why would American Family limit its liability to the lesser of "replacement cost minus depreciation" or "the amount necessary to . . . replace the property"? This reading effectively nullifies the second clause by interpreting both to address the same thing: replacement costs. Ohio courts refuse to read a clause out of the contract in this way when an alternative reading would give both clauses real effect. *See Sunoco, Inc. (R & M) v. Toledo*

*Edison Co.*, 953 N.E.2d 285, 295 (Ohio 2011). Such an alternative reading exists here. Interpreting actual cash value to mean what it "[o]rdinarily" means—market value—sensibly gives both of these limits-of-liability clauses effect. Tyler, *supra*, 61 A.L.R.2d 711 § 3; *see New Appleman*, *supra*, § 62.08[1][b][i]. One clause considers the value of the damaged property; the other clause considers the cost of replacing it.

Several courts have made an identical point when interpreting similar contracts. One court rejected a claim like Wilkerson's because the "policy set[] off the cost of replacement as an alternative and different way to measure the limit of the amount due"; the policy did not "define actual cash value to be interchangeable with the replacement cost of the vehicle[.]" *Pappas v. Auto Club Ins. Ass'n*, 2020 WL 3303004, at *4 (N.D. Ill. June 18, 2020). Another rejected such a claim because actual cash value was "distinguished from replacement costs" and the insurer was "obligated to pay the lesser of the two amounts." *Lett v. Wausau Underwriters Ins. Co.*, 2021 WL 613841, at *3 (D.N.J. Feb. 17, 2021); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867, 870 (W.D. Wis. 2019); *cf. Nicolaou v. Vt. Mut. Ins. Co.*, 931 A.2d 1265, 1271 (N.H. 2007).

Other provisions in American Family's policy confirm that "actual cash value" is best read to refer to market value, not replacement costs less depreciation. The policy, for example, elsewhere indicates that "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value[.]" Policy, R.1-1, PageID#26. This provision would serve no purpose if actual cash value *already* meant "replacement costs minus normal depreciation." *Black's Law Dictionary*, *supra*, at 1784. If actual cash value means "market value," by contrast, the provision clarifies that the damaged car's market value must consider the reduction in its worth from the pre-accident wear and tear. In that respect, this provision is analogous to clauses indicating that market value must be assessed based on the "age" and "condition" of the vehicle at the time of the accident. *See Singleton*, 953 F.3d at 337. Furthermore, the policy places a duty on the insured to report "the actual cash value and amount of loss" of the damaged property. Policy, R.1-1, PageID#21. It also allows either party to demand an appraisal using two appraisers and notes that "[e]ach appraiser will state separately the actual cash value and the

amount of loss." *Id.*, PageID#27. These other uses of the phrase "actual cash value" likewise naturally refer to the market value of the damaged car rather than the costs of replacing it.

For these reasons, the phrase "actual cash value" is "clear and unambiguous" when interpreted in the full context of American Family's policy: It refers to the market value of the damaged car. *See Covitt v. Bass Chevrolet, Inc.*, 1989 WL 73051, at *4–5 (Ohio Ct. App. June 29, 1989). It thus unambiguously excludes the taxes and fees that Wilkerson seeks in this suit.

B

Wilkerson's contrary arguments do not suffice to show an ambiguity in the policy. *First*, Wilkerson argues that our resolution of the contract's meaning is "premature at the pleading stage" because she should be permitted to gather extrinsic evidence in support of her reading. Appellant's Br. 12. But "[w]hether a contract is unambiguous is a question of law that turns on a review of its language"; a party cannot use extrinsic evidence to create an ambiguity that does not exist in the language itself. *See Masco*, 795 F. App'x at 430–31. If a court finds that the contract's language has one unambiguous meaning, therefore, the court may properly grant a motion to dismiss a breach-of-contract claim. *Id.* at 431; *see also, e.g.*, *Richelson v. Liberty Ins. Co.*, 796 F. App'x 277, 280–82 (6th Cir. 2020) (affirming dismissal); *Singleton*, 953 F.3d at 339 (same).

*Second*, Wilkerson argues that "actual cash value" is ambiguous—and so must be construed against the drafter (American Family)—because it can mean either fair market value or replacement costs minus depreciation in the *abstract*. But just because the phrase may be used in two different ways when read in isolation does not mean that all uses of the phrase are reasonably susceptible to both understandings. Ohio courts, for example, would not invoke the rule that ambiguities must be resolved in the insured's favor if the phrase "actual cash value" had an express market-value definition in the contract itself. *See Williams-Diggins*, 157 N.E.3d at 226–27. As the Ohio Supreme Court has noted, "[t]his rule . . . will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Laboy*, 41 N.E.3d at 1227 (quoting *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 34 (Ohio 2007)). And in

American Family's policy, it would be unreasonable to interpret "fair market value" to mean replacement costs when the very next clause separately includes the amount tied to those costs.

*Third*, Wilkerson turns to the specific use of "actual cash value" in the Limits of Liability section of American Family's policy. She offers two reasons why her reading of the phrase "actual cash value" in the section's first clause does not render its second clause meaningless. Wilkerson initially notes that she interprets "actual cash value" in the first clause to mean "replacement costs minus *depreciation*," whereas the second clause ("the amount necessary to . . . replace the property") does not contain a similar depreciation reduction. So what? Just because the two clauses might not completely overlap does not mean that Wilkerson's reading gives each independent effect. Under her reading, the first clause (replacement costs minus depreciation) will *always* provide a lesser value than the second one (replacement costs alone). Her view thus nullifies the second clause all the same. Wilkerson also admits that her interpretation of actual cash value as containing a depreciation component makes "superfluous" the policy's separate provision requiring the actual cash value to be adjusted for depreciation. Reply Br. 12. Interpreting actual cash value to mean market value, by comparison, sensibly gives "meaning and purpose" to all of these policy provisions. *Sunoco*, 953 N.E.2d at 295.

Wilkerson next claims that the two clauses in the Limits of Liability section address two different factual scenarios. She asserts that the first clause ("the actual cash value of the stolen or damaged property") applies only when the car is a total loss and cannot be economically repaired. And she asserts that the second clause ("the amount necessary to repair or replace the property") applies only when the car is a partial loss and can be repaired. This reading conflicts with the contract's text. The second clause cannot reasonably be limited to cars that are partial losses because it covers amounts necessary to *replace* cars (not just *repair* them). Wilkerson's response to this textual problem merely creates another: She says that, when the second clause uses the word "property," it means the damaged *car part* (like a bumper or mirror) that must be replaced, not the *car itself*. Yet both clauses use this same word ("property") when delineating their scope. And Wilkerson concedes that the first clause's use of the word "property" refers to the car as a whole. We cannot reasonably read this word to be a chameleon, changing meanings across two provisions sitting right next to each other and serving complimentary purposes.

Rather than mangle the contract language to make "actual cash value" mean replacement costs minus depreciation, we find it far simpler (and more coherent) to read "actual cash value" to mean market value.

One final point. An Ohio regulation provides "uniform minimum standards" for several types of insurance policies, *see* Ohio Admin. Code § 3901-1-54(A), including automobile insurance policies, *see id.* § 3901-1-54(H), and fire and extended coverage policies, *id.* § 3901-1-54(I). The portion of this regulation covering automobiles lists various methods by which insurers may calculate a car's cash settlement value and separately indicates that the insurers should pay the sales taxes on a replacement car only if an insured actually buys one within 30 days of receiving the cash settlement. *Id.* § 3901-1-54(H)(7)(a)–(f). Wilkerson's complaint makes no claim that she bought a replacement car within this window. Regardless, neither party cited this regulation or suggested that it should affect our interpretation of the insurance policy. *Cf. Davis*, 2020 WL 68573 at *4–6; *Ostendorf*, 2020 WL 134169, at *3. We thus need not consider the regulation.

In sum, American Family's interpretation of its insurance policy is the only reasonable one. We affirm the district court's dismissal of Wilkerson's complaint.

––––––––––––––––––

**DISSENT**

––––––––––––––––––

BERNICE BOUIE DONALD, Circuit Judge, dissenting.  The majority holds that, under this policy, the term "actual cash value" is unambiguous because it only has one reasonable meaning.  Yet, the term is not defined in the policy itself, Ohio courts have applied two meanings to the term, and the Ohio code explicitly states that an insured person such as Ms. Wilkerson may be eligible for a reimbursement of sales taxes for her "total loss" vehicle.  Because the policy's two provisions would not be in conflict with each other, Ms. Wilkerson's interpretation is a reasonable one.  I disagree that the term "actual cash value" is unambiguous.  Ms. Wilkerson's claim should have survived the motion to dismiss, because, at that pleading stage, her claim is plausible.  For this reason, I dissent.

Ohio law supports dismissal under Rule 12(b)(6) when the plain meaning of a term is clear.  *See, e.g.*, *Richelson v. Liberty Ins. Co.*, 796 F. App'x 277 (6th Cir. 2020); *Pieczonka v. Progressive Select Ins. Co.*, No. 19-CV-2965, 2020 WL 1930134, at *2 (N.D. Ohio April 21, 2020).

However, "if an insurance policy is ambiguous, the policy is construed strictly against the insurer."  *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) (citing *Andersen v. Highland House Co.*, 757 N.E.2d 329, 334 (Ohio 2001)).  The entire insurance policy "must be construed together as a whole and every provision must be given effect."  *Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, 290 F. Supp. 3d 715, 721 (N.D. Ohio 2017) (citing *Waste Management, Inc. v. Rice Danis Indus. Corp.*, 257 F. Supp. 2d 1076, 1083 (S.D. Ohio 2003)).  "[I]t will not suffice for [the insurer] to demonstrate that its interpretation is more reasonable than the policyholder's."  *Andersen*, 757 N.E.2d at 333 (quotation omitted).  Instead, "in order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is *the only one* that can fairly be placed on the language in question."  *Id.* at 332 (quotation omitted) (emphasis added).  If the policy is

ambiguous, and the insured's interpretation is reasonable, the insured prevails.  It is therefore the insurer's burden to prove that its interpretation is the only reasonable one.

Under Ohio law, the term "actual cash value" has been interpreted to mean either "market value" or "replacement costs less depreciation for age and condition."  *Williams-Diggins v. Permanent Gen. Assurance Corp. of Ohio*, 157 N.E.3d 220, ⁋ 12 (Ohio Ct. App. 2020); *Modesty v. Scottsdale Surplus Lines*, No. 86912, 2006 WL 2374311, ⁋ 11 (Ohio Ct. App. Aug. 17, 2006).  The majority correctly points out that neither the Ohio Supreme Court nor Ohio's appellate courts have settled on a "default" definition of the term "actual cash value," and that the lower courts have suggested that the term can take either definition, in the absence of any specific limiting language in the contract.  *Modesty* at *id.*

We have previously concluded that "actual cash value" includes replacement costs under Tennessee law.  *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955, 962–63 (6th Cir. 2005).  Other circuits have, too.  *See Gilderman v. State Farm Ins. Co.*, 649 A.2d 941, 945 (Pa. Super. Ct. 1994) ("[r]epair or replacement costs logically and necessarily include any costs that an insured reasonably would be expected to incur in repairing or replacing the covered loss."); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1082 (M.D. Fla. 2019) ("[insurer's] failure to pay insureds with leased-vehicle total loss claims sales tax in the amount of 6 percent of the value of the vehicle plus applicable local taxes and title transfer fees in the amount of $75.25 constitutes a material breach of contract."); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1016 (D. Ariz. 2006) ("The insured in this case is reasonably likely to incur sales tax when replacing contents with material of like kind and quality, therefore, applicable policy provision applies to include sales tax.").

Ohio federal district courts, analyzing facts and issues similar to those presented in this case, have also found that undefined terms of "actual cash value" are ambiguous.  In *Desai v. GEICO Casualty Co.*, 478 F. Supp. 3d 609, 615 (N.D. Ohio 2020), a plaintiff sued the defendant insurance company for failing to pay sales taxes, license fees, title fees, and dealer fees for her "total loss" vehicle.  The Policy defined "actual cash value" as the "replacement cost" less depreciation or betterment but did not define "replacement cost."  *Id.* at 614.  The court found

that the term "actual cash value" was ambiguous because it did not define "replacement cost" and denied the defendant's motion dismiss.

In *Ostendorf v. Grange Indem. Ins. Co.*, a plaintiff sued the defendant insurance company for failing to include the cost of a title transfer, tag transfer, and 6% sales tax in the "actual cash value" calculation under the policy for reimbursements of total losses. No. 2:19-CV-1147, 2020 WL 134169, at *2 (S.D. Ohio 2020). The policy in *Ostendorf* did not define loss or actual cash value. *Id.* The court found that the term "actual cash value" was ambiguous and thus, could include payment of sales taxes and various vehicle fees. *Id.* at *3.

Similarly, in *Davis v. GEICO Cas. Co.*, the plaintiffs sued the defendant for failing to pay the actual cash value sales tax, title-transfer fees, and registration fees at the time of the loss. No. 2:19-CV-2477, 2020 WL 68573, at *1 (S.D. Ohio Jan. 7, 2020). The court concluded that "there [wa]s some question as to whether the actual cash value at the time of the loss, which is the specific language included in the [ ] policy, actually includes sales tax, title-transfer fees, and registration fees." *Id.* at *6. Thus, the court held that the plaintiffs sufficiently pleaded a claim, at that stage of the proceedings, for breach of contract related to sales tax, title transfer fees, and registration fees. *Id.*

The majority holds that a broader look at the policy "leaves no doubt" that "actual cash value can only mean market value." However, the two options under the policy could reasonably be interpreted differently, even if we adopt "replacement costs minus depreciation" as the meaning of "actual cash value." Under the first option, the insured receives a cash amount; under the second option, American family pays a third-party repair shop to repair the existing vehicle, or a third-party dealership to replace the vehicle with another one. Thus, under the second option, the insured is never eligible to receive cash for any of the replacement costs. American Family clarifies this in its motion to dismiss, where it states: "American family did not pay to replace the vehicle," acknowledging that the second option does not give the plaintiff the option to buy her own replacement vehicle, but rather the insurer would procure the vehicle. R. 13, Motion to Dismiss, Page ID # 104. The majority also interprets the term's meaning of "replacement costs *minus depreciation*" to have the same meaning as "replacement costs," which

is outlined in American Family's policy. This subtle difference, however, means that the two policy options are not the same.

Similarly, other insurers which have defined "actual cash value" as "replacement costs less depreciation" have included both this meaning for actual cash value and the option to repair or replace the damaged vehicle, without finding that the two provisions would render the policy duplicative. *Desai*, 478 F. Supp. 3d at 614.

Even if we interpret "actual cash value" to mean "market value," several other policies with similar provisions as American Family have included sales taxes in that calculation. *See Pieczonka*, 2020 WL 1930134, at *1. Compare Progressive's policy limiting liability with the lowest of:

a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

c. the amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible; or

d. the Stated Amount shown on the declarations page for that covered auto.

*Id.* Progressive's policy stated that "actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* Even with this determination that actual cash value meant "market value," Progressive paid a cash amount, which *included* the sales tax. *Id.* The policy did not include payment for title, registration, and license fees. *Id.*

Turning to the Ohio Administrative Code, it too provides a definition of "actual cash value," which makes Ms. Wilkerson's interpretation reasonable: "The insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, *including sales tax*, less any depreciation." Ohio Admin. Code § 3901-1-54(I)(2)(a) (emphasis added). Another section, § 3901-1-54(H)(7)(f), states:

> If within thirty days of receipt by the claimant of a cash settlement for the total loss of an automobile, the claimant purchases a replacement automobile, the insurer shall reimburse the claimant for the applicable sales taxes incurred on account of the claimant's purchase of the automobile, but not to exceed the

amount that would have been payable by the claimant for sales taxes on the purchase of an automobile with a market value equal to the amount of the cash settlement. If the claimant purchases an automobile with a market value less than the amount of the cash settlement, the insurer shall reimburse only the actual amount of the applicable sales taxes on the purchased automobile. If the claimant cannot substantiate such purchase and the payment of such sales taxes by submission to the insurer of appropriate documentation within thirty-three days after receipt of the cash settlement, the insurer shall not be required to reimburse the claimant for such sales taxes.

Ohio Admin. Code § 3901-1-54(H)(7)(f). The Ohio Code also specifies: "In settlement of claimants' automobile total losses on the basis of *actual cash value* or replacement of the automobile with another of like kind and quality, an insurer which elects to offer a cash settlement to claimant shall base the offer upon the *actual cost to purchase a comparable automobile* less any applicable deductible amount contained in the policy, and/or deduction for betterment." Ohio Admin. Code § 3901-1-54(H)(7) (emphasis added). It is therefore reasonable that even in a total loss situation, the insured would be reimbursed for the sales taxes and title registration fees in order to be able to buy a new vehicle.

However, at that pleading stage, we should not even have to ask whose reading is "more reasonable." *Andersen*, 757 N.E.2d at 333. American Family "could have removed any ambiguity by simply writing its policies to expressly [exclude]" sales taxes and fees when calculating the "actual cash value." *See Hicks v. State Farm Fire & Casualty Co.*, 751 F. App'x 703, 709 (6th Cir. 2018). American Family failed to do so.

To prevail on a motion to dismiss, the insurer must show that the insured could *never* establish that her interpretation is reasonable. *See, e.g.*, *Richelson*, 796 F. App'x at 277. American Family cannot meet this burden here. When each side to an Ohio insurance dispute presents a reasonable reading of the policy, the dispute should move past the threshold dismissal stage. *See, e.g.*, *Andersen*, 757 N.E.2d at 332; *Safe Auto Ins. Co. v. Semenov*, 947 N.E.2d 1267, 1270–71 (Ohio Ct. App. 2011).

We recently clarified that "as we find ourselves at the motion-to-dismiss stage, our task is not to decide which of the parties' competing views has more merit. Instead, we ask whether [the Plaintiff] has put forward a *reasonable interpretation* of the insurance policy. If so, we must

reverse the district court and allow the suit to proceed." *Richelson*, 795 F. App'x at 281 (citing *Andersen*, 757 N.E.2d at 332). Applying the rule that ambiguities must be resolved in favor of the insured, I would reverse the district court's dismissal and allow the case to proceed. Ms. Wilkerson's claim is plausible because her interpretation of "actual cash value" is reasonable.

For the foregoing reasons, I respectfully dissent.