*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SCOTT AARON MABREY,

Defendant-Appellant.

FOR PUBLICATION
March 11, 2026
11:53 AM

No. 374947
Berrien Circuit Court
LC No. 2024-039303-FH

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

SWARTZLE, P.J.

Defendant was convicted of receiving or concealing stolen property with a value of $1,000 or more but less than $20,000 for his theft of a commercial lawnmower. At sentencing, the trial court assigned 10 points for Offense Variable (OV) 16, finding that the value of the stolen lawnmower combined with a stolen trailer was more than $20,000. Defendant challenged the value of the lawnmower listed in the presentence investigation report (PSIR), as that value was based on the original bill of sale and did not reflect any depreciation in value of the used lawnmower. In support, defendant offered evidence of depreciation—unrebutted by the prosecutor or the PSIR—from the sales manager who sold the lawnmower to the victim almost a year prior to the theft. The trial court rejected this evidence without providing a rationale, except to suggest that sometimes "these things go up" in value. Because this was an insufficient ground on which to reject defendant's unrebutted evidence, we vacate defendant's sentence and remand for resentencing.

## I. BACKGROUND

In July 2024, defendant's vehicle was found by police with an attached utility trailer containing a riding lawnmower. Police were able to identify the owner of the lawnmower who confirmed that a lawnmower and different trailer were stolen from its commercial property. The owner provided police with security camera footage of the theft, showing a vehicle of the same make and model as defendant's and a person with similar height and build as defendant. Defendant was charged under MCL 750.535(3)(a) for one count of receiving or concealing stolen property with a value of $1,000 or more but less than $20,000 for the theft of the lawnmower. Defendant

-1-

pleaded guilty and agreed to pay restitution for the stolen lawnmower and trailer; in exchange, the prosecutor agreed not to charge defendant for an additional count for the stolen trailer.

For purposes of sentencing, the PSIR assessed 10 points for OV 16, MCL 777.46, calculating the value of the stolen property to be more than $20,000. The lawnmower was valued at $18,821.93, its retail price per the bill of sale (as asserted in the PSIR; the actual bill is not in the record), and the trailer was estimated at $2,500, for a total of $21,321.93. Defendant argued that OV 16 should instead be assigned 5 points because the combined value of the items would not exceed $20,000 if sales tax for the lawnmower was excluded and depreciation of the lawnmower was considered. Defendant provided an e-mail correspondence from the manager of the store where the lawnmower was sold. The manager indicated that, in fact, he had sold this very lawnmower to the victim. The e-mail stated that the purchase price of the lawnmower was $17,590.59 plus sales tax and was purchased in August 2023. The manager also opined in the e-mail that the lawnmower's current value in the market would be between $15,000 and $16,000.

The trial court rejected defendant's arguments and assessed OV 16 at 10 points. The trial court found that the lawnmower's value included sales tax because the owner paid for that amount and therefore defendant gained the value of that paid sales tax when he stole the lawnmower. As for depreciation, defense counsel stated, "you have to factor in depreciation, your Honor." In response, the trial court stated,

> Well, not necessarily. I've sold both a car and a boat for more than I paid for it, so it -- it's as to the value at the time that the crimes [sic] committed, and it might be worth more. Things don't necessarily depreciate. I -- I acknowledge that *the vast majority of the times* they do, but I -- there -- there are instances, like I -- and I've definitely sold a home for a lot more than I paid for it on multiple occasions. [Emphasis added.]

When asked about valuation, the prosecutor responded, "Your Honor, I don't -- when I -- I don't have anything to contest the depreciation issue, so we -- ." After defense counsel confirmed that the victim had owned the lawnmower for eleven months and used it for approximately 400 hours, the trial court concluded, "No. I -- I disagree [regarding the depreciation and tax]. I think OV-16 is properly scored at 10, the mower and the trailer. In fact, these things go up, and when he's saying it's -- yeah. I disagree with that from that gentleman in Indiana, in this [case]." Defendant was sentenced to 12 to 24 months' imprisonment for his conviction, which was later amended to 12 to 60 months' imprisonment.

Defendant now appeals.

## II. ANALYSIS

### A. DEPRECIATION AND OV-16

On appeal, defendant argues that the trial court erred by assigning 10 points to OV 16 because the total value of the stolen property was not more than $20,000. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question

of statutory interpretation, which an appellate court reviews de novo." *People v Rodriguez*, 327 Mich App 573, 576; 935 NW2d 51 (2019) (cleaned up).

MCL 777.46(1)(d) states that OV 16 is assigned 10 points when property obtained, damaged, lost, or destroyed has a value of more than $20,000 or had significant historical, social, or sentimental value. If the property's value was between $1,000 and $20,000, then OV 16 is assigned 5 points. MCL 777.46(1)(e). In this case, the value of the stolen property was calculated by adding the estimated value of the trailer, $2,500, plus the retail purchase price including sales tax of the lawnmower, $18,821.93, for a total of $21,321.93. The $2,500 amount for the trailer was not disputed by defendant in the trial court or on appeal, and the trailer can be properly considered when scoring OV 16, even though defendant was not charged with the theft of the trailer. See MCL 777.46(2)(c) ("The amount of money or property involved in admitted but uncharged offenses or in charges that have been dismissed under a plea agreement may be considered."). There is no argument that the lawnmower had any "significant historical, social, or sentimental value," so the issue on appeal is whether the lawnmower's monetary value was more than $17,500 at the time of the theft.

MCL 777.46 does not define "value" and does not provide instructions on how to calculate the amount of value for purposes of OV 16. Generally speaking, value is determined as the fair market value at time of the theft and would be "the price that the item will bring on an open market between a willing buyer and seller." *People v Johnson*, 133 Mich App 150, 153; 348 NW2d 716 (1984); *People v Pratt*, 254 Mich App 425, 429; 656 NW2d 866 (2002). To determine the value of the lawnmower, the trial court was presented with several purported facts: (1) the original retail purchase price of the mower, (2) the age and (3) hours of use of the mower, and (4) the estimate from the mower's seller of the current market value of the used mower.

The purchase price may certainly be an appropriate place to start to determine the value of an item purchased at retail. The purchase price as evidence of the value is better than no evidence at all when assessing points for an offense variable. See *People v McChester*, 310 Mich App 354, 359; 873 NW2d 646 (2015) (finding that "speculation cannot form the basis to affirm" an offense variable scoring). When the record is devoid of any evidence reflecting depreciation or appreciation, then it might well be entirely appropriate to rely solely on the retail price when determining value for purposes of OV 16. But when the trial court is presented with other evidence that demonstrates that the value was different than the purchase price at the time of the offense, then the trial court should consider such evidence when making its determination.

Here, the trial court was presented with evidence that the value of the lawnmower had decreased since the owner purchased the equipment. Almost a year had lapsed and 400 hours of use had occurred, suggesting that there was ordinary wear-and-tear that would likely decrease the value of a lawnmower from its original purchase price. Additionally, the actual retail seller of the lawnmower, knowing the type of equipment and when it was purchased, valued the lawnmower at $16,000, at most. Although hearsay, the trial court could properly consider such evidence (without more) under MRE 1101(b)(3).

And, in fact, the trial court did consider the retail seller's opinion, but discarded it based on the trial court's observation that some property, such as a home or boat, can appreciate in value over time. While true as a general statement, the statement must be put in context. Certain

property can, indeed, appreciate in value over time, as a result of restricted supply, increased demand, unique attribute, or some other specific condition of supply or demand. For example, a home in a historic district will often see its value rise over time because no new homes can be built in that district, meaning a tightly restricted supply in a desirable location. As another example, a 1963 split-window Corvette in mint condition will likely appreciate in value over time, given the relatively small supply of, and high demand for, those automobiles. As a final example, a piece of industrial equipment might appreciate in value if that piece is no longer manufactured but is desperately needed to keep a factory running.

In contrast, ordinary, run-of-the-mill consumer and commercial personal property will often depreciate in value after initial retail sale. There are many reasons for this, including a plethora of substitutes, relatively steady demand, and the like. It is not often, for example, that a buyer sees an increase in the value of an automobile three weeks after driving it off the new-car lot.

The property here—a commercial lawnmower—had been purchased nearly a year before the theft, and it had approximately 400 hours of use. There is nothing in the record to suggest that there were any unique aspects of the lawnmower or the relevant market that would cause an appreciation in the equipment's value, such as discontinuation of the model in the face of significant demand for that model. The person with the most knowledge of the lawnmower and the relevant market—the actual retail seller—provided an estimate of its current value at no more than $16,000, and this depreciation in value from the initial retail price accords with both the record and basic economics. The prosecutor offered nothing in rebuttal to this evidence of depreciation, and the trial court offered no reason for rejecting the evidence, other than the observation that sometimes value can appreciate. Accordingly, the trial court clearly erred in rejecting the retail seller's opinion and instead adopting as fair market value the lawnmower's initial retail sale price.

## B. SALES TAX

As for defendant's argument regarding sales tax, this Court need not resolve this issue here. Although this Court has held in a different context that sales tax can be included in value, see *Lionel Trains, Inc v Chesterfield Twp*, 224 Mich App 350, 354; 568 NW2d 685 (1997), other jurisdictions have recently rejected this, see *Singleton v Elephant Ins Co*, 953 F3d 334, 338 (CA 5, 2020); *Thompson v Progressive Universal Ins Co*, 420 F Supp 3d 867, 872 (WD Wis, 2019). Regardless, in defendant's case, considering the depreciation of the lawnmower and the high end of the retailer's estimate of $16,000, the value of the lawnmower would not reach $17,500, with or without including the sales tax of $1,231.34.

## C. REMAND

Had the PSIR offered any evidence or argument to support accepting the original retail price of the lawnmower as its value nearly a year and 400-hours-of-use later, then remand for further evidentiary development might be warranted. Similarly, had the prosecutor offered any argument on the question of value or depreciation, then remand might be appropriate. But here, where the *only* evidence of the equipment's value at the time of theft (as opposed to when it was purchased) puts the top-end value at no greater than $16,000, it is appropriate to conclude on appeal that OV 16 should be assigned 5 points because the combined value of the lawnmower and trailer at the time of the offense did not exceed $20,000.

## D. RESPONSE TO DISSENT

Finally, two brief notes regarding the dissent: First, in asserting that this Court is "in no position to gauge the dynamics of this market," the dissent misses the point. When, like here, there is nothing in the record to suggest a type of market-disrupting circumstance that the dissent recounts (e.g., supply-chain disruptions, a parts shortage), a trial court (in the first instance) and an appellate court (on review) can assume the ordinariness of everyday life: demand curves slope down, supply curves slope up, equipment depreciates, interest rates are positive, and the like. True enough, sometimes a circumstance will occur in the market that creates some kind of imbalance or oddity (e.g., a Giffen good; negative interest rates), and when there is evidence of such circumstance in the record, a trial court should, of course, take that into account. But when the record is silent, as here, a court can assume normality as a baseline. Otherwise, even the most mundane sentencing hearing would likely turn into a multi-day, extensive evidentiary hearing, when all sorts of typical and ordinary circumstances would have to be established on the record with evidentiary support.

Second, we assert no "immutable rule" of market forces, if by "immutable" the dissent means "unchanging over time or unable to be changed." Oxford English Dictionary. The prior paragraph makes our position clear on this point. Nor do we "effectively convert[] clear error review into de novo fact-finding" in this instance, as that would fly against decades of established precedent. Rather, we merely hold that when a trial court is provided with what appears to be relevant and reliable evidence of depreciation for purposes of OV-16, the trial court must grapple with that evidence head-on. The trial court acknowledged that "the vast majority of the times" equipment does depreciate, but the trial court did not then explain why this instance was one of those rare ones when there was no depreciation at all. Instead, the trial court rejected defendant's evidence of depreciation without providing a rationale, except to suggest that sometimes "these things go up" in value. Critically, the trial court did not find or otherwise suggest some lesser amount of depreciation that would have brought the value within the dissent's proposed range of "at least $1,500 more than the [sales manager's] estimate[]." As explained, the actual observation made by the trial court in this instance was an insufficient basis to reject defendant's unrebutted evidence of depreciation.

## III. CONCLUSION

Based on the evidence introduced, it was clear error for the trial court to find that the value of the combined property exceeded $20,000, thereby assessing 10 points for OV 16. We therefore reverse on OV 16, vacate defendant's sentence, and remand for resentencing with OV 16 scored at 5 points. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado