In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-2272

NATHAN SIGLER,

*Plaintiff-Appellant,*

*v.*

GEICO CASUALTY COMPANY
and GEICO CORPORATION,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:18-cv-01446-MMM-JEH — **Michael M. Mihm**, *Judge.*

_____

ARGUED DECEMBER 10, 2019 — DECIDED JULY 24, 2020

_____

Before SYKES, *Chief Judge,* and KANNE and BARRETT, *Circuit Judges.*

SYKES, *Chief Judge.* Nathan Sigler totaled his 2001 Dodge Ram and filed a claim with GEICO, his auto insurer, for the loss. GEICO paid him for the value of the car, adjusted for depreciation, minus his deductible. Sigler claims he is entitled to more—namely, sales tax and title and tag transfer fees for a replacement vehicle, though he did not incur these

costs. He filed a proposed class action against GEICO seeking damages for breach of contract.

Illinois law governs this dispute. The district court dismissed the suit, holding that neither the GEICO policy nor Illinois insurance law requires payment of these costs when the insured does not incur them.

We affirm. The premise of Sigler's suit is that sales tax and title and tag transfer fees are *always* part of "replacement cost" in a total-loss claim—regardless of whether the insured incurs these costs. That misreads the policy and the relevant Illinois insurance regulation. GEICO's policy doesn't promise to pay sales tax or title and tag transfer fees, and the Illinois Administrative Code requires a settling auto insurer to pay these costs only if the insured actually incurs and substantiates them with appropriate documentation. Because Sigler did not do so, the judge properly dismissed the suit.

## I. Background

Nathan Sigler owned a 2001 Dodge Ram and insured it with GEICO Casualty Company.[1] In June 2013 he was involved in an accident and filed a claim with GEICO for damage to the vehicle. An adjuster determined that the vehicle was a total loss and calculated a base value of $3,151.95. GEICO paid Sigler that amount minus his $500 deductible.

---

[1] GEICO Casualty is a subsidiary of GEICO Corporation. The parent company is also named as a defendant but can be ignored for purposes of this appeal.

Sigler sued GEICO in federal court in Central Illinois[2] alleging that the insurer owed him additional money as part of the replacement cost for his vehicle—specifically, a $95 title transfer fee, a $25.50 tag transfer fee, and sales tax "in the minimum amount of $196.99." He did not allege that he purchased or leased a replacement vehicle and actually incurred these costs. Rather, the amended complaint (the operative pleading here) asserts that GEICO's insurance policy promises to pay the equivalent of these costs in *every* total-loss claim without regard to whether the insured obtains a replacement vehicle and actually incurs these costs. Sigler proposed to represent a class of policyholders on a breach-of-contract claim against GEICO for "systematically underpaying its insureds."

GEICO moved to dismiss for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6), arguing that nothing in the insurance policy's coverage provisions could reasonably be interpreted as a promise to reimburse Sigler for vehicle-replacement costs that he had not incurred. GEICO also argued that an Illinois insurance regulation, incorporated into the policy as a matter of law, requires reimbursement of these costs *only* if the insured has purchased or leased a replacement vehicle and can document that he paid taxes and transfer fees.

The judge agreed with GEICO's reading of the policy and the incorporated regulation and dismissed the suit. He set a

---

[2] The suit is in federal court based on diversity of citizenship. GEICO is a Maryland citizen. Sigler is a citizen of Illinois and proposes to represent a class of more than 100 on a claim in which the matter in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(a)(1), (c)(1), (d).

deadline for Sigler to file a second amended complaint if he had "a good faith basis" to do so. When the date passed without a new pleading, the judge entered final judgment and terminated the case.

## II. Discussion

The interpretation of an insurance policy is a question of law, so our review is de novo. *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008). In Illinois, as elsewhere, insurance disputes are governed by general contract principles, but because an insurance policy is a distinctive type of contract, questions of policy interpretation are subject to special rules that account for the type of coverage purchased, the nature of the risks involved, and the overall purposes of the policy. *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019); *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 285–86 (Ill. 2006).

Insurance policies typically begin with a basic grant of coverage—a section explaining the losses that the insurer will cover—followed by an itemization of exclusions, limitations on the insurer's liability, conditions, and (sometimes) exceptions to exclusions. GEICO's policy is structured in this typical way. In the coverage-grant section entitled "Losses We Will Pay for You," the policy states that GEICO "will pay for collision loss to the owned or non-owned auto for the amount of each loss less the applicable deductible." "Loss" is defined as "direct and accidental loss of or damage to: (a) [t]he auto, including its equipment; or (b) [o]ther insured property."

In a later section entitled "Limit of Liability," the policy places a ceiling on GEICO's payment obligation: "The limit of our liability for loss … [i]s the actual cash value of the property at the time of the loss." "Actual cash value" is defined as "the replacement cost of the auto or property less depreciation or betterment." Sigler's claim rests on this language. He contends that in every total-loss claim, GEICO is contractually obligated to pay "actual cash value," defined as "the replacement cost of the auto or property less depreciation or betterment." Although "replacement cost" is not further defined, Sigler argues that it must always include amounts equal to the applicable sales tax and title and tag transfer fees because Illinois collects these taxes and fees whenever vehicles are purchased or leased. And GEICO must pay, he continues, whether or not the insured purchases or leases a replacement vehicle and actually incurs these costs.

This argument misconstrues a limitation on liability as a promise to pay. Put slightly differently, Sigler mistakes a liability ceiling for a floor. The Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the *most* that GEICO will pay in the event of a covered loss. To repeat: the coverage-granting language says only that GEICO will pay for the "collision loss to the owned or non-owned auto," with "loss" defined as "direct and accidental loss of or damage to" an insured vehicle or "[o]ther insured property."

Sigler argues that the policy's "silence" on whether he is entitled to payment for taxes and fees he did not incur should be interpreted in favor of coverage because GEICO

cannot point to unambiguous language that *excludes* these particular costs. That gets things backward. Analysis of exclusions does not come into play unless these costs are encompassed within GEICO's basic coverage grant in the first instance; an insurance policy does not need to exclude coverage for something that it does not cover to begin with. *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 779 (7th Cir. 2015).

As important, the policy is not really silent on this subject. An Illinois insurance regulation specifically addresses when an auto insurer must pay sales tax and title and tag transfer fees in a total-loss claim, and the regulation is incorporated into the policy as a default term as a matter of law. *See Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 967 (7th Cir. 2000) ("Illinois laws automatically are incorporated into all contracts of insurance in that state."); *Kapinus v. State Farm Mut. Auto. Ins. Co.*, 738 N.E.2d 1003, 1005 (Ill. App. Ct. 2000) ("It is well settled that, when an insurance policy is issued, applicable statutory provisions in effect at the time are treated as part of the policy.").

The Illinois Administrative Code provides that when an auto insurer determines that an insured vehicle is a total loss as a result of a collision, the insurer may elect to either replace the insured vehicle or pay a cash settlement. ILL. ADMIN. CODE tit. 50, § 919.80(c)(1), (2). If the insurer chooses to pay a cash settlement, the regulation requires payment of applicable sales tax and title and transfer fees *only* when the insured purchases or leases a new vehicle within a specified time and substantiates that he has incurred these costs:

> If a cash settlement is provided, and if within
> 30 days after the receipt of the settlement by

> the insured[] the insured has purchased or leased a vehicle, the company is required to re-imburse the insured for the applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the vehicle … . *If the insured cannot substantiate such purchase and the payment of such taxes and fees*[] *by submission to the company of appropriate documentation within 33 days after the receipt of settlement*, *the company shall not be required to reimburse the insured for the sales taxes or transfer or title fees*.

*Id.* § 919.80(c)(3)(A)(i) (emphasis added).

The use of the word "reimburse" is telling. The regulation mandates payment of these costs *if and only if* the insured (1) has purchased or leased a vehicle within 30 days of receiving a cash settlement and incurred applicable sales taxes and fees and (2) substantiates the purchase and payment of those taxes and fees by submitting appropriate documentation to the insurer within 33 days after the receipt of the settlement.

To be sure, an insurer may contractually obligate itself to pay these costs without substantiation; the regulation states that "[i]n lieu of" the above-described "reimbursement procedure," an insurer "*may* directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement." *Id.* (emphasis added). But "may" is a permissive term, and permissive statutory or regulatory language, by definition, does not command anyone to do anything. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS

112 (2012) ("The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive … .").

As a last resort, Sigler argues that the regulatory conditions on reimbursement do not apply unless the insurance policy unambiguously *opts in* to the payment regime established in section 919.80(c)(3)(A)(i). That's a nonstarter. As we explained, the regulation is incorporated as a term in the policy as a matter of law. An insurer may contract to provide coverage *above* the default floor specified in the regulation, but it must do so expressly. *See Brandt v. Time Ins. Co.*, 704 N.E.2d 843, 851 (Ill. App. Ct. 1998) ("By entering into a contract, and by not excluding or modifying the effects of the various laws, the contracting parties are deemed to have accepted these laws as part of their agreement."). GEICO did not do so.[3]

A straightforward reading of GEICO's policy and the incorporated regulation defeats Sigler's claim. He does not allege that he incurred these vehicle-replacement costs, let alone that he substantiated them before the deadline speci-

---

[3] The Fifth Circuit's recent decision in *Singleton v. Elephant Insurance Co.*, 953 F.3d 334 (5th Cir. 2020), does not affect the outcome here. There, as here, the plaintiffs filed a proposed class action against their auto insurer alleging that recovery in a total-loss collision claim *always* includes taxes and fees for a replacement vehicle. The case turned on Texas law, which construes "actual cash value" as "fair market value." *Id.* at 337. The court held that "fair market value" under Texas caselaw does *not* include taxes and fees and affirmed the dismissal of the suit. *Id.* at 338. Our case is even clearer: the Illinois insurance regulation, incorporated into the GEICO policy as a matter of law, specifically provides that a settling insurer is not required to pay sales tax and title and tag transfer fees *unless* the insured timely provides documentation that these costs were actually incurred.

fied in the regulation. Accordingly, his claim for breach of contract necessarily fails, and the decision below is

AFFIRMED.