RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JEREMY MARCHEK, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

*v.*

No. 23-1908

UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas Corporation,

*Defendant-Appellee*.

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-00087—Paul Lewis Maloney, District Judge.

Argued: May 2, 2024

Decided and Filed: October 11, 2024

Before: LARSEN, READLER, and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Jacob L. Phillips, NORMAND PLLC, Orlando, Florida, for Appellant. Paula M. Ketcham, ARENTFOX SCHIFF LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Jacob L. Phillips, NORMAND PLLC, Orlando, Florida, Scott Edelsberg, EDELSBERG LAW, P.A., Aventura, Florida, for Appellant. Paula M. Ketcham, Jay Williams, ARENTFOX SCHIFF LLP, Chicago, Illinois, Elise Hyejin Yu, ARENTFOX SCHIFF LLP, Ann Arbor, Michigan, for Appellee.

---

**OPINION**

---

CHAD A. READLER, Circuit Judge.  Following an accident, Jeremy Marchek sued his auto insurer, United Services Automobile Association, claiming that the company breached the terms of the policy it issued to Marchek.  According to Marchek, USAA wrongfully failed to compensate him for sales taxes and mandatory fees necessary to purchase a replacement vehicle after USAA declared his vehicle to be beyond repair.  The district court dismissed the complaint on the basis that USAA was not contractually obligated to compensate Marchek for taxes and fees.  Because the plain language of the contract plausibly requires USAA to compensate Marchek for those costs, we reverse and remand for further proceedings.

I.

Marchek sustained significant damage to his vehicle during an accident.  As one often does in that unfortunate circumstance, he filed a claim with his auto insurer, USAA.  As part of USAA's claims resolution process, a third-party estimator prepared a "Market Valuation Report" and concluded that Marchek's vehicle had a "base value" of $24,981 immediately prior to the accident.  After considering that pre-accident value as well as the costs necessary to repair or replace the vehicle, USAA declared a "total loss," a term of art in Marchek's policy.  Accordingly, USAA paid Marchek $24,881—his vehicle's pre-accident value less, as called for in his policy, a $100 deductible.

Marchek believes he is entitled to more.  He reads his policy to require USAA to compensate him for the market value of his car plus the sales taxes and government fees necessary to purchase a replacement vehicle.  To see why, turn to the policy provisions at issue.

In most respects, the parties read the policy language in a similar light.  To begin, all agree that Marchek's policy required USAA to pay for the costs necessary to repair or replace a damaged vehicle.  In deciding how much is owed to Marchek, both parties agree that USAA was authorized to declare the vehicle to be a total loss if "the cost to repair it would be greater than its actual cash value minus its salvage value after the loss."  In the event of a total loss, the policy

explains, USAA's liability is capped at the "actual cash value of the vehicle," also known as ACV.  ACV, in turn, is defined as "the amount that it would cost, at the time of loss, to buy a comparable vehicle."

And herein lies the rub.  Marchek insists that the proper calculation of ACV, as the term is used in the policy, includes taxes and mandatory government fees.  Because USAA declared his vehicle to be a total loss, Marchek claims that USAA must pay him an amount that is equivalent to the ACV calculation, including taxes and fees.  USAA disagrees, and thus refused to include those amounts in resolving Marchek's claim.

Marchek filed a putative class action lawsuit on behalf of himself and other Michigan USAA policyholders who similarly were not paid associated taxes and fees after USAA declared their vehicles to be total losses.  His complaint alleged that USAA's underpayment amounted to a breach of contract under Michigan law.  USAA moved to dismiss the complaint, asserting that Marchek's policy did not require the company to cover taxes and fees when reimbursement is calculated under the policy's ACV provision.  The district court granted the motion and subsequently denied Marchek's motion for reconsideration.  Marchek appealed.

## II.

As is customary, we examine the dismissal of a complaint for failure to state a claim for breach of contract through a de novo lens.  *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695, 699 (6th Cir. 2022).  In so doing, we accept Marchek's plausible factual allegations as true and draw all reasonable inferences in his favor.  *See Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).  To survive a motion to dismiss, a complaint may not rely on conclusory legal allegations.  *Id.*  Instead, it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up).  With this case arising through our diversity jurisdiction, we apply the substantive law of the forum state, Michigan.  *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015).  Michigan law, in turn, treats insurance policies "in the same manner as other contracts."  *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012).  Accordingly, "actions for breach of contract require (1) a contract

(2) that was breached and (3) damages." *Stackpole Int'l Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC*, 52 F.4th 274, 283 (6th Cir. 2022) (citing *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)).

This appeal focuses on the second element: whether Marchek plausibly alleged that USAA breached its insurance contract with Marchek. The answer turns on the policy's language. And the parties dispute the language's meaning in two ways, both tied to its ACV provision. First, Marchek believes that the contract's definition of ACV includes sales taxes and mandatory fees associated with purchasing a new vehicle. USAA, on the other hand, insists that ACV equates to the market value of the damaged vehicle only. Second, Marchek claims that USAA is obligated to pay him that ACV amount because the insurer declared his vehicle to be a total loss. USAA, for its part, argues that the ACV provision does not dictate its payment obligations under the policy.

Before taking up these competing interpretations, the narrow task before us bears emphasizing. This appeal arises out of a grant of USAA's Rule 12(b)(6) motion. So our task is to assess whether USAA's interpretation of the policy language—that ACV does not include taxes and fees—is unambiguously correct, thus entitling it to dismissal. *See Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 668 (6th Cir. 2021) (applying Ohio law and explaining that a breach of contract suit is subject to Rule 12(b)(6) dismissal if an insurance policy "*unambiguously* excludes the taxes and fees typically incurred to buy replacement property"). Turning to that issue, we first consider the contract's definition of ACV followed by USAA's obligations in the event of a total loss.

A. Does ACV, as defined in Marchek's policy, unambiguously exclude the taxes and fees necessary to acquire a replacement vehicle? In answering that question, we aim "to honor the intent of the parties." *In re Auto. Parts Antitrust Litig.*, 997 F.3d 677, 681 (6th Cir. 2021) (citing *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 667 (Mich. Ct. App. 2000)). We discern that intent by giving the policy terms their "ordinary and natural meaning," *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 842 F.3d 422, 426 (6th Cir. 2016) (citation omitted) (interpreting Michigan law), with reliance on dictionary definitions as appropriate, *Auto-Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 539 (Mich. Ct. App. 2015). In so doing, we construe the

contract "to give effect to every word or phrase as far as practicable." *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017) (citation omitted).

In Michigan, "[w]hether contract[] language is ambiguous is . . . a question of law reviewed de novo." *Id.* "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Kendzierski v. Macomb County*, 931 N.W.2d 604, 612 (Mich. 2019) (quoting *In re Smith Trust*, 745 N.W.2d 754, 758 (Mich. 2008)). Michigan courts consider a contract ambiguous when "two provisions of the same contract irreconcilably conflict with each other" or when a provision "is equally susceptible to more than a single meaning." *Id.* (citations omitted). If a contract is ambiguous, its interpretation is "a question of fact that must be decided by the jury." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453–54 (Mich. 2003).

1. Marchek's policy defines ACV as "the amount that it would cost, at the time of loss, to buy a comparable vehicle. As applied to [a] covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." With no dispute here over what qualifies as a comparable vehicle, our focus is on the phrase "the amount it would cost . . . to buy" that comparable vehicle. The contract does not specify how to make this calculation. But the meaning of each word within this phrase offers some clues.

Begin with the noun "amount." Merriam-Webster's Dictionary defines the term to mean "the total number or quantity." *Amount*, Merriam-Webster's Dictionary, https://perma.cc/GNM5-VAGE (last visited Oct. 8, 2024). In the financial context specifically, the Oxford English Dictionary defines "amount" as "[t]he total financial value or cost (*of* something)." *See Amount*, Oxford English Dictionary, https://perma.cc/XVA7-BSS7 (last visited Oct. 8, 2024). The Britannica Dictionary similarly notes that "amount" is "a quantity of money." *Amount*, The Britannica Dictionary, https://perma.cc/5VFW-KMSY (last visited Oct. 8, 2024).

Next, take the meaning of the verb "cost," modified by the modal verb "would." When used as a verb, "to cost" means "to require expenditure or payment." *Cost*, Merriam-Webster's

Dictionary, https://perma.cc/NX3J-4Q5H (last visited Oct. 8, 2024). The modal verb "would," in turn, expresses "a possible situation that has not happened" or that one is "imagining." *Would*, The Britannica Dictionary, https://perma.cc/4T7Q-T468 (last visited Oct. 8, 2024).

Finally, turn to the infinitive "to buy." Again, according to Merriam-Webster's, "to buy" means "to acquire possession, ownership, or rights to the use or services of by payment especially of money." *Buy*, Merriam-Webster's Dictionary, https://perma.cc/6TFT-3VW6 (last visited Oct. 8, 2024). The Brittanica Dictionary says much the same. It defines "to buy" as "to get (something) by paying money for it." *Buy*, The Brittanica Dictionary, https://perma.cc/PRN5-V996 (last visited Oct. 8, 2024). Other dictionaries that define "to buy" offer similar definitions. *See, e.g.*, *Buy*, Cambridge Learner's Dictionary, https://perma.cc/VJH4-BSPQ (last visited Oct. 8, 2024) ("to buy" is "to get something by paying money for it"); *Buy*, Dictionary.com, https://www.dictionary.com/browse/buy (last visited Oct. 8, 2024) ("to buy" is "to acquire the possession of, or the right to, by paying or promising to pay an equivalent"); *Buy*, Collins Dictionary, https://www.collinsdictionary.com /us/dictionary/english/buy (last visited Oct. 8, 2024) (similar).

Reading these definitions together reveals a more precise meaning of the longer phrase "the amount it would cost to buy" a comparable vehicle. Start with the first five words. "The amount it would cost" means the "quantity of money" "required" as expenditure or payment. Modifying that phrase with the term "to buy," "the amount it would cost to buy" means the total quantity of money required "to acquire possession, ownership, or rights" over the end object— here, the comparable vehicle. Putting it all together, "the amount it would cost to buy a . . . comparable vehicle" means the total quantity of money that is required to acquire possession of a comparable vehicle.

Does the total quantity of money needed to acquire ownership of a vehicle unambiguously exclude taxes and mandatory fees? To our eye, no. In Michigan, purchasers of a vehicle must pay a six percent sales tax to be "collected by the secretary of state before the transfer of the vehicle." Mich. Comp. Laws § 205.179 (2004); *see also id.* § 205.52; Mich. Admin. Code r. 205.54 (2023) (requiring collection of sales tax for vehicles sold by auto dealers). The Wolverine State similarly requires purchasers to pay certain fees when registering

a new vehicle, as Marchek alleges in his complaint. *See* Mich. Comp. Laws § 257.801 (2023). Accordingly, the quantity of money needed to acquire ownership of a vehicle arguably includes dollars that must be paid to the state in taxes and fees.

To bolster the point, consider a hypothetical, alternative phrasing. Imagine a contract that defined ACV as "the price of a comparable vehicle." The price of a comparable vehicle would be "the amount as money given . . . as consideration for the sale" of such a vehicle. *Price*, Merriam-Webster's Dictionary, https://perma.cc/63R2-AEFH (last visited Oct. 8, 2024). Focusing in on the word "consideration," it would be odd to say that sales taxes and mandatory fees are a part of the consideration in a contract. *See Gen. Motors Corp. v. Dep't of Treasury*, 644 N.W.2d 734, 738 (Mich. 2002) (explaining that consideration requires a "bargained-for exchange" with "a benefit on one side, or a detriment suffered, or service done on the other" (cleaned up)). After all, as the party selling a vehicle does not keep the taxes and fees associated with the sale, those sums are not a benefit received by the seller. *See id.* So this hypothetical definition of ACV likely would not encompass taxes and fees. On the other hand, "the amount it would cost to buy a comparable vehicle" sweeps more broadly. It reflects the total financial outlay required to legally acquire a vehicle. That sum seemingly is greater than the vehicle's purchase price.

A few everyday examples of consumers in the Wolverine State confirm that the contract's definition of ACV does not unambiguously exclude sales taxes and mandatory fees. Consider a college student shopping for a 2023 College Football Playoff National Championship sweatshirt in Ann Arbor. With a fifty-dollar bill in hand, the student selects a maize version priced at $49.99. Yet the student will be unable to purchase the sweatshirt. After taxes, the amount it will cost to buy the sweatshirt exceeds fifty dollars, despite the sweatshirt's list price of $49.99. Or consider a more ambitious shopper—a teenager in Milford saving up to buy her first car. As many have learned, you cannot buy a $10,000 car at the used car lot with only $10,000 in your bank account. As these examples further demonstrate, the policy's definition of ACV does not unambiguously exclude the taxes and fees necessary to purchase a vehicle in Michigan.

2.  USAA offers several points in rebuttal.  A main point of emphasis is a Michigan statute governing salvaged vehicles.  *See* Mich. Comp. Laws § 257.217c(27) (2023).  USAA argues that the statute conclusively defines ACV under Michigan law.  And, it adds, because Marchek did not address this statute in his opening brief, he failed to preserve any argument that ACV includes taxes and fees.  Neither argument has merit.

Begin with USAA's contention that Marchek abandoned his central argument about ACV's meaning because he failed to address the salvage statute in his opening brief on appeal.  We disagree.  True, "[w]e will treat an argument as forfeited when it was not raised in the opening brief." *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) (cleaned up).  But Marchek's opening brief consistently argued that a plain reading of the definition of ACV in the contract requires USAA to pay for taxes and fees. Fair enough, Marchek did not address the import (if any) of Michigan's salvage statute.  It may have been wise to do so, especially when the district court observed that the statute's definition of ACV "provides at least persuasive authority on how the policy would be interpreted under Michigan law."  But USAA offers no support for the proposition that an appellant's failure to address one authority supporting the ruling below forfeits the appellant's right to contest the ruling as a whole.  Here, Marchek plainly addressed whether ACV includes taxes and fees in his opening brief.  He therefore preserved the issue.  And there can be no unfair "surprise" to USAA in our discussing the salvage statute on appeal; USAA itself briefed the salvage statute in support of the district court's ruling.  *See Glennborough Homeowners Ass'n v. USPS*, 21 F.4th 410, 415 (6th Cir. 2021).

That takes us to the merits of USAA's statutory argument.  USAA contends that "Michigan law is clear that ACV means the market value of the car" exclusive of any associated taxes and fees required to obtain the vehicle because the salvage statute defines ACV as "the retail dollar value of a vehicle," a phrase that arguably excludes taxes and fees.  *See* Mich. Comp. Laws § 257.217c(27) (2023).  The statute cannot bear such weight.  For one, the statute's definition of ACV, by its own terms, applies only to state laws governing salvage or distressed vehicles under § 257.17c of the Michigan Vehicle Code.  *Id.* (defining ACV "[f]or the purpose[s] of this section").  Accordingly, nothing in the statute purports to dictate how insurance

companies should calculate ACV in assessing whether to declare a vehicle a total loss. Even were that not the case, USAA and Marchek opted to define ACV differently, a right they enjoyed under Michigan law. *See Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999) (honoring the express definition of an insurance contract as defined by the parties); *Heath v. State Farm Mut. Auto. Ins. Co.*, 659 N.W.2d 698, 699 (Mich. Ct. App. 2002) ("If the insurance contract sets forth definitions, the policy language must be interpreted according to those definitions."); *see also Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 32 (Mich. 2005) (holding that parties are free to contract around default statutory rules as long as contractual provisions do not violate public policy). And, tellingly, that language differs from the language of the salvage statute, demonstrating why one could include taxes and fees while the other might not.

In any event, says USAA, the "plain, common-sense meaning" of actual cash value cannot possibly include taxes and fees. For support, the insurer points to our decision in *Wilkerson v. American Family Insurance Co.*, 997 F.3d 666 (6th Cir. 2021). That case involved similar facts. An Ohio plaintiff sued American Family Insurance after her vehicle was deemed a total loss following an auto accident. *Id.* at 668. Like Marchek, Wilkerson insisted that her insurer was obligated to compensate her for taxes and fees associated with purchasing a new vehicle. *Id.* But the similarities end there. Most notably, the insurance policy in *Wilkerson* declined to define "actual cash value," leaving it to us to divine the term's meaning. That deft discussion thus has little bearing on today's case, where the parties defined "actual cash value" as "the amount it would cost . . . to buy a comparable vehicle." Other definitions carry little value as a result.

Next, USAA points to the aspect of the contractual definition of ACV that requires the parties to consider comparable vehicles with "the same make, model, model year, body type, and options with substantially similar mileage and physical condition." These terms, according to USAA, make plain that the contract's definition of ACV includes only market value, and excludes taxes and fees. We disagree. The contract references factors such as vehicle make and model with regard to what constitutes a "comparable vehicle." But the policy defines ACV in terms of what it would cost "to buy" that comparable vehicle, meaning other variables, such as taxes and fees, arguably require consideration. *See* Sean Scaturro, *What's the True Cost of Your*

*New Car?*, USAA, https://perma.cc/FQ6Q-9SVM (last visited Oct. 8, 2024) (explaining that "other costs, such as tax" and "registration fee[s]" factor into the "[t]rue costs to buy" a vehicle). The parties could have defined ACV as the market value of a comparable vehicle. Or as a vehicle's retail dollar value, as does the salvage statute. But, it bears repeating, they chose not to, a choice we must respect. And considering this chosen definition of ACV, we cannot say that it "unambiguously excludes the taxes and fees" necessary to purchase a new vehicle. *See Wilkerson*, 997 F.3d at 668.

B. This understanding of ACV leads to a straightforward conclusion as to USAA's financial obligations in the event of a total loss, like Marchek's. Here again, our analysis is guided by the plain meaning of the policy terms. *See Seils*, 871 N.W.2d at 539.

USAA's financial obligations arise out of the "Insuring Agreement" section of the policy. That provision requires USAA to pay for "loss caused by collision to [a] covered auto . . . minus any applicable deductible." "Loss," in turn, is defined as:

> [D]irect and accidental damage to the operational safety, function, or appearance of, or theft of, your covered auto or personal property contained in your covered auto. Loss includes a total loss, but does not include any damage other than the cost to repair or replace. Loss does not include any loss of use, or diminution in value that would remain after repair or replacement of the damaged or stolen property.

USAA's obligation to pay for loss is not unchecked. The insurer's liability is limited if it deems a vehicle to be a "total loss." As the policy's "Limit of Liability" section explains, USAA may declare damage to a vehicle to be a total loss if, in its judgment, "the cost to repair it would be greater than its actual cash value minus its salvage value after the loss." If so, USAA's financial obligation is capped at the "actual cash value of the vehicle."

In that sense, the policy works in a straightforward manner. To recap, USAA agrees to pay for costs necessary to repair or replace a covered vehicle. Sometimes, those costs will not exceed ACV. An insured who suffers a minor fender bender in a new car, for instance, seemingly would not be entitled to a check for the car's ACV, an amount that would likely well exceed the cost to repair the vehicle. But when repair costs exceed the ACV of the damaged vehicle less its salvage value, USAA is entitled to declare a total loss. When that happens,

USAA presumably would opt to pay the insured the vehicle's ACV—an amount lower than the total cost to repair or replace the vehicle. Put differently, USAA must pay for the costs necessary to repair or replace a vehicle, or alternatively the vehicle's ACV, whichever is less. But here, Marchek alleges that USAA paid him an amount that was less than either the cost to repair or replace his vehicle or the vehicle's ACV. Taken as true, those allegations plausibly amount to a breach of the insurance policy.

USAA disagrees. It insists that ACV is the policy's limitation of liability, not a promise to pay. This argument is largely unresponsive. No one disputes that USAA's financial obligations arise from its agreement to pay for loss on a covered vehicle. But in most total loss cases, USAA will be obligated to pay ACV because its responsibilities under the Insuring Agreement will push the insurer's financial obligation above its liability limit. According to Marchek's complaint, that is exactly what happened here.

Seeking support for its argument that it is not required to pay ACV, USAA turns to a pair of decisions from the Seventh Circuit. *See Sigler v. GEICO Cas. Co.*, 967 F.3d 658 (7th Cir. 2020); *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 839 F. App'x 20 (7th Cir. 2021) (order). First in *Sigler* and later in *Coleman*, the Seventh Circuit concluded that the insurers there were not obligated to compensate policy holders for sales taxes and registration fees in total loss claims. Although the facts of *Sigler* and *Coleman* largely mirror those in today's case, neither is a helpful guide. Both involved insurance policies governed by Illinois law, which explicitly dictated when an insurer must pay for taxes and fees in total loss claims. As the Seventh Circuit recognized, Illinois law "requires payment of applicable sales tax and title and transfer fees *only* when the insured purchases or leases a new vehicle within a specified time and substantiates that he has incurred these costs." *Sigler*, 967 F.3d at 661; *Coleman*, 839 F. App'x at 21 (same). Because neither Sigler nor Coleman alleged that they purchased new vehicles, Illinois law instructed that they were not entitled to compensation for taxes and fees. *Sigler*, 967 F.3d at 661; *Coleman*, 839 F. App'x at 21–22. Accordingly, neither *Sigler* nor *Coleman* concluded that an insurer may pay less than its liability limit when the cost to repair or replace a damaged vehicle exceeds that limit. Instead, the Seventh Circuit seemingly held that, under Illinois law, taxes and fees are not always factored into a policy's liability limit calculation. *Sigler*, 976 F.3d at 662 &

n.3; *Coleman*, 839 F. App'x at 21 (discussing the "proper measure of a total loss" considering applicable Illinois law).  Here, USAA's liability limit is the amount it would cost to buy a comparable vehicle. And because there is no Michigan statute dictating when an insurer must compensate an insured for taxes and fees related to purchasing a new vehicle, it is fair to conclude that USAA's liability limit does not unambiguously exclude those costs.

C.  In sum, USAA has not shown that the contract unambiguously disclaims an obligation to compensate policyholders for sales taxes and fees associated with purchasing a replacement vehicle in instances of a total loss.  Accordingly, we disagree with the district court's decision to grant USAA's motion to dismiss Marchek's complaint.  And we reverse and remand for further proceedings.  *Cf. Perry v. Allstate Indem. Co.*, 953 F.3d 417, 424 (6th Cir. 2020) (Readler, J., concurring in part and dissenting in part).

\*      \*      \*      \*      \*

We reverse the district court's judgment and remand for further proceedings.