25-118 (L)
*In re Residential Capital, LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand twenty-six.

PRESENT:

> REENA RAGGI,
> SUSAN L. CARNEY,
> BETH ROBINSON,
> > *Circuit Judges.*

_____

IN RE: RESIDENTIAL CAPITAL, LLC,

> *Debtor.*

_____

RESCAP LIQUIDATING TRUST, as successor to Residential Funding Company, LLC, ROWENA DRENNEN, individually and as representative of the Kessler Settlement Class, FLORA GASKIN, individually and as representative of the Kessler Settlement Class, ROGER TURNER, CHRISTIE TURNER, individually and as the representatives of Kessler Settlement Class, JOHN PICARD, individually and as the representative of the Kessler Settlement Class, REBECCA PICARD, individually and as the representative of the Kessler Settlement Class, STEVEN MITCHELL, individually and as the representative of the Mitchell Settlement Class,

*Plaintiffs-Appellants-Cross-Appellees*,

RESIDENTIAL CAPITAL, LLC, RUTH MITCHELL, individually and as the representative of the Mitchell Settlement Class,

*Plaintiffs*,

v.

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, TWIN CITY FIRE INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, CLARENDON NATIONAL INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, ST. PAUL MERCURY INSURANCE COMPANY, NORTH AMERICAN SPECIALTY INSURANCE COMPANY,

*Defendants-Appellees*,

SWISS RE INTERNATIONAL SE,

*Defendant-Appellee-Cross-Appellant*,

ACE BERMUDA INSURANCE LTD, XL INSURANCE (BERMUDA) LTD., AMERICAN INTERNATIONAL REINSURANCE COMPANY LTD., CHUBB ATLANTIC INDEMNITY LTD.,

*Defendants.*[*]

Nos. 25-118 (Lead),
25-131 (CON),
25-138 (CON),
25-225 (XAP)

---

[*] The Clerk's office is respectfully directed to amend the caption as reflected above.

2

_____

<table>
<tr><td>FOR PLAINTIFF-APPELLANT-CROSS-APPELLEE RESCAP LIQUIDATING TRUST:</td><td>VIVEK CHOPRA, Perkins Coie LLP, Washington, D.C., (Selena J. Linde, Perkins Coie LLP, Washington, D.C.; Alexis E. Danneman, Perkins Coie LLP, Phoenix, AZ, *on the brief*).</td></tr>
<tr><td>FOR PLAINTIFFS-APPELLANTS-CROSS APPELLEES KESSLER AND MITCHELL CLASS MEMBERS:</td><td>R. FREDERICK WALTERS (Karen W. Renwick, Michael B. Sichter, and J. Michael Vaughan, Walters Renwick Richards & Vaughan, P.C., Kansas City, MO; David M. Skeens, Davis Bethune & Jones, LLC, Kansas City, MO, *on the brief*).</td></tr>
<tr><td>FOR DEFENDANTS-APPELLEES TWIN CITY FIRE INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, CLARENDON NATIONAL INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, ST. PAUL MERCURY INSURANCE COMPANY, NORTH AMERICAN SPECIALTY INSURANCE COMPANY:</td><td>Cara T. Duffield, Lavin Rindner Duffield LLC, Washington, D.C.; Karen Toto, Wiley Rein LLP, Washington, D.C.; Patrick M. Kennell, Kaufman Dolowich LLP, New York, NY; Harry Lee, John O'Connor, Steptoe LLP, Washington, D.C.; Ronald P. Schiller, Sharon F. McKee, Hangley Aronchick Segal Pudlin & Schiller, Philadelphia, PA; Patrick Stoltz, Scott A. Schechter, Kaufman Borgeest & Ryan LLP, Valhalla, NY; Kent A. Yalowitz, Daniel R. Bernstein, Arnold & Porter Kaye Scholer LLP, New York, NY.</td></tr>
<tr><td>FOR DEFENDANTS-APPELLEES CERTAIN UNDERWRITERS AT LLOYDS, LONDON:</td><td>JONATHAN HACKER, O'Melveny & Myers LLP, Washington, D.C. (J. Gregory Lahr, DAC Beachcroft LLP, New York, NY, *on the brief*).</td></tr>
</table>

FOR DEFENDANT-APPELLEE-CROSS-
APPELLANT SWISS RE INTERNATIONAL
SE:

THORN ROSENTHAL, (Alice Kim, *on the brief*), Cahill Gordon & Reindel LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court judgment entered on December 13, 2024, is **AFFIRMED**.

Residential Funding Company, LLC ("RFC") was a financial services company that purchased mortgage loans from originating banks and then either packaged and resold or securitized those loans for sale to downstream investors. RFC did not itself originate mortgages or receive fees related to the mortgage originations or closings; all fees were paid to the originating banks. RFC, as a subsidiary of General Motors Corporation, was an insured party under a General Motors professional liability policy issued by Certain Underwriting Members at Lloyd's of London ("Lloyd's"), as well as under a tower of excess policies written by other insurers (collectively, with Lloyd's, "Insurers").[1]  All of the applicable

---

[1] The other insurers are Twin City Fire Insurance Company, Continental Casualty Company, Clarendon National Insurance Company, Steadfast Insurance Company, St. Paul Mercury Insurance Company, North American Specialty Insurance Company, and Swiss RE International

policies include terms materially identical to the Lloyd's policy (the "Policy") for purposes of this case.

At issue is whether the Policy covers RFC's liability relating to two class actions (the "*Mitchell*" class action and the "*Kessler*" class action) alleging primarily that certain mortgage loan fees charged by the originating banks were unlawful and that RFC, as purchaser of those loans, was derivatively liable under the Home Ownership and Equity Protection Act.  *See* 15 U.S.C. § 1641(d)(1).  While those actions were pending, RFC filed for Chapter 11 bankruptcy.  The bankruptcy court ultimately approved a Chapter 11 plan that included settlements of the *Mitchell*[2] and *Kessler* actions and assigned to the newly created liquidating Trust and representatives of both classes ("Class Representatives") the right to pursue claims against Insurers for payment of the settlements and related defense costs.

The Trust and Class Representatives (collectively, "Plaintiffs") then brought an adversary proceeding to enforce those rights.  After cross-motions for partial summary judgment, the bankruptcy court recommended holding that RFC's

SE.  Four other insurers, ACE Bermuda Insurance Ltd., XL Insurance (Bermuda) Ltd., American International Reinsurance Company Ltd., and Chubb Atlantic Indemnity Ltd., also provided excess coverage but did not participate in the district court proceedings because the bankruptcy court compelled arbitration of the claims against them.

[2] A portion of the *Mitchell* class action had previously been resolved by jury verdict.  *See Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 484 (Mo. Ct. App. 2010), *as modified* (Feb. 1, 2011).

liability and costs were not excluded from coverage by either of two asserted exclusions. *In re Residential Capital*, 610 B.R. 725, 737–38, 746–47 (Bankr. S.D.N.Y. 2019). The district court subsequently withdrew its reference to the bankruptcy court, and it awarded summary judgment to Insurers based on an exclusion in the Policy for losses arising from any claim "for . . . fees . . . payable by or to the Assured" (the "Fee Exclusion"). *See Drennen v. Certain Underwriters at Lloyd's of London*, No. 23-cv-3385, 2024 WL 4476067, at *1 (S.D.N.Y. Oct. 11, 2024).

Plaintiffs appeal.[3] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

"Because interpretation of an insurance agreement is a question of law, we review the district court's construction of the Policy without deference to its reasoning." *Marcus & Cinelli, LLP v. Aspen American Insurance Co.*, 158 F.4th 333,

---

[3] One insurer, Swiss RE International SE, conditionally cross-appeals from the court's grant of partial summary judgment to Plaintiffs on the applicability of a separate exclusion. *See Drennen v. Certain Underwriters at Lloyd's of London*, No. 23-cv-3385, 2024 WL 4839350, at *1 (S.D.N.Y. Nov. 20, 2024). It essentially offers an alternative basis to affirm the district court's judgment for Insurers. Because we affirm the district court's judgment for Insurers based on the Fee Exclusion, we dismiss Swiss Re International SE's cross-appeal as moot.

340 (2d Cir. 2025).[4]  "Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Thermal Surgical, LLC v. Brown*, 150 F.4th 115, 120 (2d Cir. 2025) (quoting Fed. R. Civ. P. 56(a)).

"Under New York law, although it is a policyholder's burden to show that an insurance contract covers a claimed loss, the initial interpretation of the contract is a matter of law to be decided by the court."  *CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368, 381 (2d Cir. 2025).[5]  The interpretation must give effect to the parties' intent "as expressed in the clear language of the contract," or, "if that language is ambiguous[,] as is ascertainable from extrinsic evidence bearing on the parties' intent at formation."  *Id.* at 381–82.  As a result, courts "must favor a plain and ordinary interpretation of unambiguous contractual terms and may turn to extrinsic evidence only when faced with ambiguous ones."  *Id.* at 382.

---

[4] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

[5] The parties agree that either New York or Michigan law applies to the substantive questions of policy interpretation, and the district court applied the law of both states.  Because there are no relevant conflicts between the two, and the parties discuss both Michigan and New York law in their briefing, we apply both states' law.  *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) (explaining that parties' implied consent is sufficient to establish the applicable law); *Finance One Public Co. v. Lehman Brothers Special Financing, Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (explaining that the full choice of law analysis is triggered only when relevant substantive conflicts are present).

7

If the ambiguity is not resolved by extrinsic evidence, the agreement should be resolved "in favor of the insured." *Id.* Whether ambiguity is present is a question of law. *Id. See also Marchek v. United Services Automobile Association*, 118 F.4th 830, 834–35 (6th Cir. 2024) (applying Michigan law).

The district court concluded that Insurers were not obligated to cover RFC's liability based on the Policy's Fee Exclusion, which excludes coverage for loss arising from any claim "for premiums, return premiums, *fees*, commissions, costs, expenses or other charges paid or payable by or to the Assured; provided, however, that this Exclusion shall not apply to Costs, Charges and Expenses in connection with a Mortgage Fee Claim which is otherwise covered under Insuring Clause I.D."[6] Policy § III.C.9, App'x 480 (emphasis added). RFC, as a subsidiary of General Motors, is an Assured. It is undisputed that the fees that are the subject of the *Kessler* and *Mitchell* class actions were paid to the originating banks and not to RFC.

But the district court reasoned that claims arising from fees paid to the originating bank—for which Insureds are derivatively liable under 15 U.S.C.

---

[6] Plaintiffs do not rely on this exception to the exclusion to argue that even if the Fee Exclusion applies to their losses generally, they are entitled to defense costs because the class actions raised covered Mortgage Fee Claims as defined in Policy § II.Y.

8

§ 1641(d)—fall within the Fee Exclusion through the operation of a separate provision, known as the "Deemer Clause." That provision states, "As used in the Exclusions set forth in Clause III.C.," which includes the Fee Exclusion, "the term Assured includes any person or entity for whose conduct an Assured is legally responsible in rendering or failing to render Professional Services." Policy § III.C, App'x 483.

We agree with the district court's reasoning. By its plain language, the Deemer Clause includes the originating banks within the meaning of "Assured" for purposes of the Fee Exclusion. Read together, the Fee Exclusion and Deemer Clause provide that, subject to a limited exception for certain defense costs relating to Mortgage Fee Claims that does not apply here, coverage is excluded for losses arising from claims for fees "paid or payable by or to the Assured," "includ[ing] any person or entity for whose conduct an Assured is legally responsible in rendering or failing to render Professional Services." Plaintiffs' arguments to the contrary are unpersuasive.[7] We consider and explain our reasoning as to each in turn.

---

[7] The Trust and Class Representatives submitted separate briefs, presented separate oral arguments, and raised distinct arguments in support of their claims. For concision and clarity, however, we refer generally to "Plaintiffs' arguments" and do not specify whether a particular argument was raised by the Trust, Class Representatives, or both.

## I.    The *Kessler* and *Mitchell* Class Actions Were for "Fees"

Even assuming Plaintiffs did not waive this argument by failing to develop it in the district court, we reject their contention that RFC's liability does not arise from a claim for "fees" for purposes of the Fee Exclusion.

"Fees" is a term undefined by the Policy, so the Court can look to dictionary definitions to determine its plain meaning. *See 10 Ellicott Square Court Corp. v. Mountain Valley Indemnity Co.,* 634 F.3d 112, 120 (2d Cir. 2011) (citing New York law) ("It is common practice for the courts of [New York] to refer to the dictionary to determine the plain and ordinary meaning of words to a contract."); *Smejkal v. Beck*, --- N.W.3d ---, No. 363394, 2024 WL 1684864, at *2 (Mich. Ct. App. Apr. 18, 2024), *appeal denied,* 11 N.W.3d 813 (Mich. 2024) (same). Black's Law Dictionary defines "fee" as "[a] charge for labor or services, esp. professional services." FEE, Black's Law Dictionary (12th ed. 2024).[8] The fees at issue in the underlying litigations were certain closing, origination and settlement fees charged to borrowers by the originating banks. *See Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 485 (Mo. Ct. App. 2010); *In Re: Community Bank of Northern Virginia*

---

[8] The Seventh Edition, in use at the time the policy was written, gives the same definition. FEE, Black's Law Dictionary (7th ed. 1999).

*Second Mortgage Lending Practices Litigation*, MDL No. 1674, No. 2:03-cv-00425 (W.D. Pa., filed Oct. 4, 2011), ECF No. 507 ("MDL Complaint") at ¶¶ 2, 69–70. As charges for labor and services related to the issuance of mortgages, these were "fees" within the ordinary meaning of the term and thus constitute "fees" under the Fee Exclusion.

Plaintiffs argue that because these were mortgage-related fees, they are potentially subject only to the separate Mortgage Fee Claim Exclusion, which excludes coverage for losses (other than certain otherwise covered defense costs) arising from Mortgage Fee Claims. Policy § III.C.10, App'x 481. The Policy defines Mortgage Fee Claims as claims "arising out of fees paid to or by a Professional Liability Assured in connection with loan origination, loan processing, loan closing, loan marketing or loan servicing, inclusive of any yield spread premium, overage, premium pricing, yield spread differential, par plus pricing, discharge fee, loan payoff charge or late payment fee." Policy § II.Y, App'x 473.

Plaintiffs' argument cannot be reconciled with the terms of the Fee Exclusion. As noted above, the Fee Exclusion explicitly excepts from its reach claims for certain defense costs associated with "a Mortgage Fee Claim which is otherwise covered under Insuring Clause I.D." Policy § III.C.9, App'x 480. There

would be no reason to include within the Fee Exclusion language excepting defense costs for Mortgage Fee Claims if such costs were not presumptively excluded by the Fee Exclusion in the first place.

Moreover, the Fee Exclusion and Mortgage Fee Claim Exclusion vary in scope. For example, the Mortgage Fee Claim Exclusion expressly includes losses arising from "any yield spread premium, overage, premium pricing, yield spread differential, par plus pricing, discharge fee, loan payoff charge or late payment fee." Policy § II.Y, App'x 473. Because the Mortgage Fee Claim Exclusion expressly covers these items, not all of which appear to be "fees" within common usage, reading the Fee Exclusion to encompass mortgage-related fees as well does not render the Mortgage Fee Claim Exclusion superfluous.

Finally, contrary to Plaintiffs' arguments, the underlying claims against RFC were "for" fees within the meaning of the exclusion. Although allegations in the *Kessler* class action included claims for illegal kickbacks and failure to make certain disclosures, s*ee* MDL Complaint at ¶¶ 440–47, 456–86—in particular, kickbacks and disclosure violations related to fees charged to mortgagors—both the *Kessler* and *Mitchell* classes sought compensatory damages for their payment of the wrongful *fees*, *see id*. at 110; *Mitchell*, 334 S.W.3d at 486.

## II. The Deemer Clause Applies

The Deemer Clause provides that for purposes of various policy exclusions, including the Fee Exclusion, "the term Assured includes any person or entity for whose conduct an Assured is legally responsible in rendering or failing to render Professional Services." Policy § III.C, App'x 483. Plaintiffs contend that the Deemer Clause does not apply to the originating banks because (1) RFC is not "legally responsible" for the acts of those banks, and (2) those banks did not provide "Professional Services" as defined in the Policy. Assuming these arguments were preserved, we find them unpersuasive.

If RFC is not "legally responsible" for the wrongful acts of the originating banks for purposes of the Deemer Clause, it's difficult to see how it would be legally responsible for the fee-related misconduct of the originating banks for purposes of the operative coverage provision. The policy provision through which Plaintiffs seek to *establish* coverage, § I.D., uses almost the same language as does the Deemer Clause. In particular, § I.D. provides: "Underwriter shall pay on behalf of the Assureds . . . Loss which the Assureds shall become legally obligated to pay by reason of any Claim . . . resulting directly from a Wrongful Act committed by a Professional Liability Assured or by any person or entity for

13

whose conduct a Professional Liability Assured *is legally responsible in rendering or failing to render Professional Services*." App'x 467 (emphasis added). And if the phrase "in rendering or failing to render Professional Services" applies to the conduct of the originating banks for whose conduct RFC is statutorily liable, and not for RFC's own conduct, that reading would undermine not only the applicability of the Deemer Clause, but also the applicability of the operative coverage provision. *See* Policy § III.C, App'x 483; Policy § I.D., App'x 467.

Plaintiffs attempt to avoid this tension by arguing that RFC is *not* derivatively liable for the wrongful acts of the originating banks but, rather, is liable for *its own* misconduct. That argument cannot be squared with the record of the underlying class actions. *See, e.g., Mitchell*, 334 S.W.3d at 505–06 (holding that RFC could be liable for the originating banks' violations of Missouri consumer protection law by operation of federal statute or by being an indirect recipient of the improper fees under Missouri law). Moreover, the *only* wrongful act of RFC that Plaintiffs identified at oral argument was its purchase of the loans without adequate vetting. But the statute it relied upon in asserting a duty to vet was 15 U.S.C. § 1641(d)(1), which provides that the purchaser or assignee of a mortgage

14

can be held liable for all claims against the mortgage creditor. That's derivative liability. In any event, both arguments fail on their own terms.

### A. Legally Responsible

Even assuming the argument was preserved, we are unpersuaded by Plaintiffs' argument that RFC was not "legally responsible" for the originating banks' conduct within the meaning of the Deemer Clause because RFC had no legal duty to oversee or supervise the banks.

"Legally responsible" is undefined in the Policy. The current Black's Law Dictionary defines "legally" as "In a lawful way; in a manner that accords with the law" or "According to the law." LEGALLY, Black's Law Dictionary (12th ed. 2024). It defines "responsible" as, among other definitions, "Morally or legally answerable for the discharge of a duty, trust, debt, service, or other obligation; specif., marked by accountability to some higher authority for the execution of certain duties." *Id.* RESPONSIBLE.[9] Applying the plain meaning of "legally" and "responsible," the Clause thus includes any person or entity for whose conduct an

---

[9] The Seventh Edition uses the same definition of legally but provides no definition of "responsible." LEGALLY, Black's Law Dictionary (7th ed. 1999).

Assured is answerable according to the law in rendering or failing to render Professional Services.

Here, RFC was liable—that is, legally responsible—for the banks' fee-related conduct through the operation of 15 U.S.C. § 1641(d)(1). *See Mitchell*, 334 S.W.3d at 505–06; MDL Complaint at ¶ 50. That provision states, "Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage . . . ." 15 U.S.C. § 1641(d)(1). Thus, as a purchaser of the relevant mortgages, RFC essentially stands in the shoes of the originating banks for liability purposes and is *legally responsible* for their actions.

Nothing in the language of the Policy supports Plaintiffs' alternative argument that "legal responsibility" signifies only a supervisory or agency-type relationship. Though supervisory authority over another may be one source of derivative legal liability—or legal responsibility for another's actions—we see no reason to depart from the generally understood meaning of "legal responsibility" in interpreting the Policy.

### B. Professional Services

We likewise conclude that the district court correctly held that the Deemer Clause applies when RFC, and not the originating banks, renders Professional Services within the meaning of the Policy.

Again, the Deemer Clause states that the term Assured "includes any person or entity for whose conduct an Assured is legally responsible in rendering or failing to render Professional Services." Policy § III.C, App'x 483. Professional Services is a defined term under the Policy, and means services to customers or clients rendered "by or on behalf of a Professional Liability Assured" (such as RFC) in the ordinary course of its business. Policy § II.FF, App'x 474. Plaintiffs contest the view that the phrase "in rendering . . . Professional Services" describes the circumstances in which *an Assured* is relevantly "legally responsible." That is, they dispute that the Clause is triggered when the Assured is legally responsible for another entity's conduct in *the Assured's* rendering or failing to render Professional Services. Instead, Plaintiffs contend that the phrase actually describes the circumstances in which the existence of an "entity for whose conduct an Assured is legally responsible" may trigger the Deemer Clause. In particular, they contend that the Clause is triggered when *the entity* for which the Assured is

legally responsible is "rendering or failing to render Professional Services." Because, in Plaintiffs' view, the Deemer Clause applies only when the banks render Professional Services, and because the banks *cannot* render Professional Services as defined in the Policy, Plaintiffs argue that the Deemer Clause does not apply.

Plaintiffs' interpretation is contrary to the plain language of the provision. The most natural reading is that the "in rendering" phrase limits the scope of the Assured's relevant legal responsibility by specifying that the Assured must have been responsible for the other entity's conduct in the course of *the Assured's* own rendering of Professional Services, rather than legally responsible in the course of other conduct. The Policy, after all, covers the *Assureds*, not the banks.

Moreover, the "in rendering" phrase immediately follows "for whose conduct *Assured* is legally responsible," indicating that the Deemer Clause applies when the Assured is legally responsible as part of its own rendering or failing to render Professional Services. Plaintiffs would have a strong argument if the Policy said that "the term Assured includes any person or entity for whose conduct in rendering or failing to render Professional Services an Assured is legally responsible." But that's not what it said.

Our interpretation is consistent with the Policy's definition of Professional Services, which requires the services to have been performed by a Professional Liability Assured and not by other entities for which an Assured may be legally responsible. Plaintiffs argue that this reading creates a conflict with the Deemer Clause, which applies to persons or entities for whose actions "an Assured"—not the more specific term "Professional Liability Assured"—is legally responsible. But given the scope of the coverage clause to which the Section III.C. exclusions modified by the Deemer Clause apply, this divergence is not a discrepancy at all. The operative coverage provision, § I.D., concerns only wrongful acts by *Professional Liability Assureds* and those for whose conduct they are legally responsible. So the only category of Assureds to which the Deemer Clause will, as a practical matter, apply is the category of Professional Liability Assureds—the only category of Assureds that can render Professional Services under the Policy. *See* Policy § II.FF, App'x 474.

The parties agree for the purposes of this appeal that RFC was engaged in Professional Services. Both the *Mitchell* and *Kessler* classes alleged that RFC's business model involved the purchase, securitization, and resale of mortgages and that RFC's relationship with the originating banks facilitated those activities. *See,*

*e.g.,* MDL Complaint at ¶ 4; *Mitchell*, 334 S.W.3d at 485. Because RFC was legally responsible for the originating banks' conduct in rendering these services, the Deemer Clause applies to the originating banks.

**III.  The Fee Exclusion's Use of the Definite Article "The" Does Not Nullify the Effect of the Deemer Clause**

Finally, Plaintiffs argue that even if the Deemer Clause applies, because the Fee Exclusion excludes coverage for loss in connection with a claim for fees "paid or payable by or to *the* Assured," App'x 480 (emphasis added), the exclusion applies only to fees received by *the Assured seeking coverage*—here, RFC—and does not include fees received by others described in the Deemer Clause.

The cases they rely on are distinguishable. Most involve policies under which multiple persons or entities are insured by a policy. They hold generally that "exclusionary language referring to the conduct by '*an* insured' excludes coverage to all insureds on the basis of the conduct of any insured," but where the exclusionary language "refers to the conduct of '*the* insured,' coverage is only precluded as to the particular insured who engaged in the conduct and not as to any other insured covered by the same policy." *Vanguard Insurance Co. v. McKinney*, 459 N.W.2d 316, 320 (Mich. Ct. App. 1990) (emphasis added). In this case, however, the originating banks are not other insureds under the Policy. By

virtue of the Deemer Clause, RFC's *derivative liability* for the originating banks' wrongful collection of fees brings the banks within the meaning of Assured *only* for purposes of the Fee Exclusion. Caselaw protecting innocent insureds has no bearing here.

Here, even if we accepted that the Exclusion applies only to losses received by the Assured seeking coverage, by virtue of the Deemer Clause, those fees received by the Assured seeking coverage *include* fees received by the originator banks. This construction gives full effect to the language of the Deemer Clause.

\* \* \*

For the above reasons, the district court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court